EBERLY, EXECUTRIX, APPELLEE, *v.* A–P CONTROLS, INC., APPELLANT.

[Cite as *Eberly v. A–P Controls, Inc.* (1991), 61 Ohio St.3d 27.]

(No. 90–1294—Submitted March 20, 1991—Decided June 19, 1991.)

*Okey Law Firm, Eugene P. Okey* and *Steven P. Okey,* for appellee.

*Baker, Meekison & Dublikar, Ralph F. Dublikar* and *Philip N. Vigorito,* for appellant.

---

WRIGHT, J. Appellant, A–P, presents three propositions for the court's consideration. The first attacks the verdict entered by the appellate court

based upon the interrogatories returned by the jury. The second attacks the jury verdict as against the manifest weight of the evidence. The last attacks the trial court's ruling on the admissibility of hearsay statements of Warfel offered by A–P. We will address the second and third propositions initially, and close with the first proposition.

## I

A–P contends that the verdict was not supported by the evidence and, thus, the trial court erred when it denied A–P's motion for a directed verdict. At the outset, we note that this court is not required to weigh the evidence in a case before it. R.C. 2503.43. Generally, this court will not upset " '[j]udgments supported by some competent, credible evidence * * * as being against the manifest weight of the evidence.' " *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 411, 461 N.E.2d 1273, 1276, quoting *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

At trial, the plaintiff introduced expert testimony, based upon facts in evidence, that the duct system was negligently designed by A–P, and that this negligence was a proximate cause of Eberly's death. The weight to be given this evidence was properly a matter for the jury. Consequently, we will not overturn the verdict as being against the weight of the evidence, and the judgment of the court of appeals in this respect is affirmed.

## II

A–P also asserts as error the exclusion of hearsay testimony relating to statements made by Warfel, A–P's former sole owner and president, now deceased. A–P contends that, although hearsay, these statements are admissible under Evid.R. 804(B)(5), which provides an exception to the exclusion of hearsay when the declarant, if alive, would have been a party to the suit. Evid.R. 804(B)(5) provides:

"*Statement by a deceased, deaf-mute, or incompetent person.* The statement was made by a decedent, or a deaf-mute who is now unable to testify, or a mentally incompetent person, where (a) the estate or personal representative of the decedent's estate, or the guardian or trustee of the deaf-mute or incompetent person is a party, and (b) the statement was made before the death or the development of the deaf-mute condition or the incompetency, and (c) the statement is offered to rebut testimony by an adverse party on a matter which was within the knowledge of the decedent, deaf-mute, or incompetent person."

The plaintiff responds that A–P fails to satisfy the first criterion: A–P is not the estate or the personal representative of Warfel. Therefore, the exception is not available to A–P.

A–P responds twofold. First, as sole owner and president of A–P, Warfel and A–P were in essence one, and therefore A–P satisfies the rule as being Warfel's representative. Second, fairness requires admission of these statements in that the plaintiff was able to admit many of Warfel's statements throughout trial on the basis that they were admissions of a party-opponent pursuant to Evid.R. 801(D)(2).[2] A–P argues that it is unfair to employ some of Warfel's statements against A–P while excluding those that favor A–P.

The second rationale in support of admission misconstrues Evid.R. 804(B)(5) and in so doing reveals a more fundamental reason why the proffered testimony is inadmissible.

Evid.R. 804(B)(5) was not intended as a counterpart to Evid.R. 801(D)(2); rather, Evid.R. 804(B)(5) was promulgated in response to the abrogation of the "dead man's" statute, R.C. 2317.03. *Johnson v. Porter* (1984), 14 Ohio St.3d 58, 14 OBR 451, 471 N.E.2d 484, syllabus. Without dwelling on its history, the "dead man's" statute[3] was a remnant of the ancient rule barring parties

---

2. Evid.R. 801(D)(2) reads:

"*Admission by party-opponent.* The statement is offered against a party and is (a) his own statement, in either his individual or a representative capacity, or (b) a statement of which he had manifested his adoption or belief in its truth, or (c) a statement by a person authorized by him to make a statement concerning the subject, or (d) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (e) a statement by a co-conspirator of a party during the course and furtherance of the conspiracy upon independent proof of the conspiracy."

3. R.C. 2317.03, Ohio's "dead man's" statute, read:

"A party shall not testify when the adverse party is the guardian or trustee of either a deaf and dumb or an insane person or of a child of a deceased person, or is an executor or administrator, or claims or defends as heir, grantee, assignee, devisee, or legatee of a deceased person except:

"(A) As to facts which occurred after the appointment of the guardian or trustee of an insane person, and, in the other cases, after the time the decedent, grantor, assignor, or testator died;

"(B) When the action or proceeding relates to a contract made through an agent by a person since deceased, and the agent is competent to testify as a witness, a party may testify on the same subject;

"(C) If a party, or one having a direct interest, testifies to transactions or conversations with another party, the latter may testify as to the same transactions or conversations;

"(D) If a party offers evidence of conversations or admissions of the opposite party, the latter may testify concerning the same conversations or admissions; and, if evidence or declarations against interest made by an insane, incompetent, or deceased person has been admitted, then any oral or written declaration made by such insane, incompetent, or deceased person concerning the same subject to which any such admitted evidence relates, and which but for this provision would be excluded as self-serving, shall be admitted in evidence if it be proved

from testifying. When the absolute bar was lifted, the "dead man's" statute remained, barring a party from testifying against an executor or administrator of an estate based upon a claim against the deceased. *Johnson, supra,* at 60–61, 14 OBR at 453–454, 471 N.E.2d at 486, and sources cited therein. As held in *Johnson,* Evid.R. 601 abrogated R.C. 2317.03 by removing this bar to giving testimony. However, along with Evid.R. 601, Evid.R. 804(B)(5) was promulgated to level the playing field: if the adverse party may testify, the decedent may testify from the grave through hearsay to rebut the testimony by the adverse party.

While it is not particularly clear what testimony the proffered statements were intended to rebut, from the nature of the arguments to each court that considered the issue, it appears that the statements were intended to rebut certain of Warfel's statements admitted pursuant to Evid.R. 801(D)(2). Evid.R. 804(B)(5) only permits hearsay offered to rebut testimony by an adverse party. Certainly Warfel was not an adverse party to himself. Considering that the proffered statements concern the design and manufacture of the duct system, it is truly unlikely, and no proffer was made to suggest, that the statements are offered to rebut testimony by the adverse party, Nancy Eberly, the executrix of Eberly's estate. Therefore, this hearsay was inadmissible, and based on the foregoing reason, the judgment of the court of appeals is affirmed in this respect.

A–P's other contention, that as sole owner and principal executive officer Warfel and A–P are the same party, is an interesting proposition; however,

---

to the satisfaction of the trial judge that the declaration was made at a time when the declarant was competent to testify, concerning a subject matter in issue, and, when no apparent motive to misrepresent appears;

"(E) In an action or proceeding by or against a partner or joint contractor, the adverse party shall not testify to transactions with, or admissions by, a partner or joint contractor since deceased, unless they were made in the presence of the surviving partner or joint contractor, and this rule applies without regard to the character in which the parties sue or are sued;

"(F) If the claim or defense is founded on a book account, a party may testify that the book is his account book, that it is a book of original entries, that the entries therein were made in the regular course of business by himself, a person since deceased, or a disinterested person, and the book is then competent evidence in any case, without regard to the parties, upon like proof by any competent witness;

"(G) If after testifying orally, a party dies, the evidence may be proved by either party on a further trial of the case, whereupon the opposite party may testify to the same matters;

"(H) If a party dies and his deposition is offered in evidence, the opposite party may testify as to all competent matters therein.

"This section does not apply to actions for causing death, or actions or proceedings involving the validity of a deed, will or codicil. When a case is plainly within the reason and spirit of this section and sections 2317.01 and 2317.02 of the Revised Code, though not within the strict letter, their principles shall be applied."

under the facts presented, this contention is not reached and we therefore leave that question for another day.

### III

### A

Although the parties and the court of appeals have confused the issue, the propriety of the two disparate verdicts entered by the lower courts based upon the interrogatories returned by the jury raise two distinct errors. First, Barmet should not have been included in the interrogatories submitted to the jury. Second, the case should not have been submitted to the jury based upon the comparative negligence statute, the former R.C. 2315.19.[4]

---

4. R.C. 2315.19, as applicable herein, read:

"(A)(1) In negligence actions, the contributory negligence of a person does not bar the person or his legal representative from recovering damages that have directly and proximately resulted from the negligence of one or more other persons, if the contributory negligence of the person bringing the action was not greater than the combined negligence of all other persons from whom recovery is sought. However, any damages recoverable by the person bringing the action shall be diminished by an amount that is proportionately equal to his percentage of negligence, which percentage is determined pursuant to division (B) of this section. This section does not apply to actions described in section 4113.03 of the Revised Code.

"(2) If recovery for damages determined to be directly and proximately caused by the negligence of more than one person is allowed under division (A)(1) of this section, each person against whom recovery is allowed is liable to the person bringing the action for a portion of the total damages allowed under that division. The portion of damages for which each person is liable is calculated by multiplying the total damages allowed by a fraction in which the numerator is the person's percentage of negligence, which percentage is determined pursuant to division (B) of this section, and the denominator is the total of the percentages of negligence, which percentages are determined pursuant to division (B) of this section to be attributable to all persons from whom recovery is allowed. Any percentage of negligence attributable to the person bringing the action shall not be included in the total of percentages of negligence that is the denominator in the fraction.

"(B) In any negligence action in which contributory negligence is asserted as a defense, the court in a nonjury trial shall make findings of fact, and the jury in a jury trial shall return a general verdict accompanied by answers to interrogatories, that shall specify:

"(1) The total amount of damages that would have been recoverable by the complainant but for his negligence;

"(2) The percentage of negligence that directly and proximately caused the injury, in relation to one hundred per cent, that is attributable to each party to the action.

"(C) After the court makes its findings of fact or after the jury returns its general verdict accompanied by answers to interrogatories, the court shall diminish the total amount of damages recoverable by an amount that is proportionately equal to the percentage of negligence of the person bringing the action, which percentage is determined pursuant to division (B) of this section. If the percentage of the negligence of the person bringing the action is greater than the total of the percentages of the negligence of all other persons from whom recovery is sought, which percentages are determined pursuant to division (B) of this section, the court

The court of appeals considered the inclusion of Barmet in the interrogatories as improper both under R.C. 2315.19 and under traditional negligence law. The appellate court, finding that the plaintiff never objected to the use of R.C. 2315.19, invoked plain error as the basis for reversal. There are few reported decisions interpreting R.C. 2315.19. One of them, *Couch v. Thomas* (1985), 26 Ohio App.3d 55, 26 OBR 228, 497 N.E.2d 1372, held that R.C. 2315.19 relieved a joint tortfeasor from liability for the percentage of negligence attributable to a statutorily immune employer. While *Couch* was seemingly on point, the court of appeals distinguished *Couch* by finding R.C. 2315.19 inapplicable. In so doing, the court also avoided certifying a conflict.

However, we hold that *Couch* was wrongly decided, for R.C. 2315.19 did not provide for apportioning negligence to persons or entities not parties to the action.[5] R.C. 2315.19 was specific. It provided in subsection (B) for apportionment only among parties to the action:

"In any negligence action in which contributory negligence is asserted as a defense, the court in a nonjury trial shall make findings of fact, and the jury in a jury trial shall return a general verdict accompanied by answers to interrogatories, that shall specify:

" * * *

"(2) The percentage of negligence that directly and proximately caused the injury, in relation to one hundred per cent, that is attributable to each party to the action."

Accordingly, we hold that the trial court improperly included Barmet in the interrogatories under R.C. 2315.19.

The court of appeals also ruled that R.C. 2315.19 did not govern the case. The court held that because there was no contributory negligence,[6] R.C. 2315.19 was inapplicable. This was a correct statement of law in this difficult field. An explanation of R.C. 2315.19's function in conjunction with R.C.

---

shall enter a judgment for the persons against whom recovery is sought." 138 Ohio Laws, Part I, 594–595.

R.C. 2315.19 has been amended since this case was tried. See 142 Ohio Laws, Part I, 1661, 1686. Unless specified to the contrary, all references in this opinion to R.C. 2315.19 refer to the statute as it existed prior to January 5, 1988, the effective date of the most recent amendment.

5. While R.C. 2315.19 has undergone significant changes since this case was tried, neither the former nor the current version provides for allocation of fault to a nonparty.

6. Although contributory negligence was pled as a defense, it was not submitted to the jury by the court and no party has asserted error in this omission. Undoubtedly this is because the record contains no evidence of contributory negligence.

2307.32(E) may clear up some of the confusion about joint tortfeasor actions under Ohio law.

R.C. 2315.19 provided for several, or allocated, liability among joint tortfeasors who are parties to an action based upon comparative fault; however, several liability was triggered only upon a finding of negligence on the part of the plaintiff. R.C. 2315.19(A). Accordingly, R.C. 2315.19(B) required interrogatories allocating fault whenever the plaintiff's contributory negligence was pled as a defense. If a jury returned answers to interrogatories finding no negligence attributable to the plaintiff, then joint and several liability would lie.[7] In that circumstance, the interrogatory allocating fault among multiple tortfeasors set forth contribution rights among them pursuant to R.C. 2307.32(E).[8]

Consequently, in cases potentially involving multiple tortfeasors and plaintiff negligence, under either the old or new R.C. 2315.19, all potential tortfeasors amenable to process should be joined as defendants pursuant to Civ.R. 14 and 20, and cross-claims for contribution should also be pled in anticipation of the possibility that a plaintiff may not be found contributorily negligent.[9] Cf. *Robinson v. Parker–Hannifin Corp.* (1982), 4 Ohio Misc.2d 6, 4 OBR 257, 444 N.E.2d 1084, Part 2 of the opinion and appendix. Such a proceeding avoids the possibility of inconsistent verdicts in subsequent contribution actions, conserves judicial resources, and harmonizes R.C. 2315.19 with 2307.31 and 2307.32.

B

We next consider the relief appropriate for the trial court's error of including Barmet in the interrogatories and in reducing the jury's monetary finding. The court of appeals determined that because the trial court erroneously included Barmet in the interrogatories and because A–P's negligence was a proximate cause of Eberly's injury, A–P was liable for the entire one

---

7. The current R.C. 2315.19(B) now makes clear that contributory negligence must be established to trigger the provisions of the statute.

8. R.C. 2307.32(E), as applicable herein, read:
    "Valid answers to interrogatories by a jury or findings by a court sitting without a jury in determining the liability of the several defendants for an injury or wrongful death shall be binding as among such defendants in determining their right to contribution."

9. We make no comment today as to whether it is appropriate under R.C. 2307.32 to seek contribution from a co-defendant by motion after the return of a verdict with an appropriate interrogatory without having previously filed a cross-claim for same.

million dollar assessment of damages. Judge Milligan, in his dissent from the opinion below, found this remedy extreme:

"The result fashioned by the majority is unconscionable. It invokes the limited provisions of App.R. 12(B) and multiplies the verdict of the jury and the judgment of the trial court ten-fold (from $100,000 to $1,000,000), and fails to certify conflict with *Couch v. Thomas* (1985), 26 Ohio App.3d 55, 26 OBR 228, 497 N.E.2d 1372.

*"And this all in the name of 'plain error.'*

"The most severe remedy this court should grant—assuming plain error, or error at all, is an order of remand for a new trial." (Emphasis *sic.*)

We agree with Judge Milligan's concerns as to the appropriate remedy. The trial court submitted this case to the jury on the (unspoken) premise that no party would be held responsible for the negligence of the non-party, Barmet. While we cannot know precisely the thought processes of the jury, the interrogatories could well have misled the jury to believe that A–P would only be accountable for its percentage of fault.[10] In light of the answers to the interrogatories returned by the jury, we are not completely confident that a jury would find A–P negligent, its negligence a proximate cause, and would award one million dollars assuming Barmet was entirely left out of the interrogatories. In our view, the nature of the charge and interrogatories submitted undermined the proper function of the jury in this case so as to render the verdict unreliable as to A–P. This error, though not objected to, results in a manifest miscarriage of justice and, as such, constitutes plain error. See *O'Connell v. Chesapeake & Ohio RR. Co.* (1991), 58 Ohio St.3d 226, 569 N.E.2d 889. Therefore, the judgment of the court of appeals must be reversed in part and the cause remanded for a new trial against A–P consistent with this opinion.

*Judgment affirmed in part,*
*reversed in part,*
*and cause remanded.*

MOYER, C.J., HOLMES and H. BROWN, JJ., concur.

SWEENEY, DOUGLAS and RESNICK, JJ., concur in part and dissent in part.

---

10. We recognize that a similarly misleading interrogatory results where there is no plaintiff negligence and one of multiple tortfeasors properly a party is insolvent. However, in that situation there remains some possibility of contribution resulting from a bankruptcy proceeding. In this case, the laws of the state preclude recovery for contribution based on a negligence claim against an employer for injury to an employee. See R.C. 4123.74. Therefore, there being no possibility that the employer will be responsible for its share of damages as determined by the jury, the interrogatories were inescapably misleading.

DOUGLAS, J., concurring in part and dissenting in part. With the utmost of respect, I must write separately in this case because the majority decision contains a litany of ideas and concepts that are, in my judgment, inaccurate, especially given the language of former R.C. 2315.19 read in conjunction with R.C. 2307.31 and 2307.32.

I concur with paragraphs one and two of the syllabus. I cannot concur with paragraphs three and four of the syllabus.

There is no question that both former and current R.C. 2315.19 apply *only* where a plaintiff is contributorily negligent. There also is no question that *only* parties are to be included under both current and former versions of the statute. In fact, in the current (1988) version of the statute, the word "established" has been added, so that R.C. 2315.19(B) now reads: "If contributory negligence * * * is asserted *and established* as an affirmative defense * * *." (Emphasis added.) This differs from the former version which read, where " * * * contributory negligence is asserted as a defense * * * " (former R.C. 2315.19[B]) and "[t]he total amount of damages that would have been recoverable by the complainant *but for his negligence;*" (former R.C. 2315.19[B][1]). (Emphasis added.) Thus, given this language, it is clear that when there is *no* finding of contributory negligence on the part of a plaintiff, then the court or jury goes no further in making the findings required by former R.C. 2315.19(B)(1), (2) and (C) and current R.C. 2315.19(B)(1), (2), (3) and (4), and the case is decided like any other negligence case (plaintiff v. defendant[s]). If there is more than one defendant, then the defendants are left to and between themselves to the remedies provided to them by R.C. 2307.31 and 2307.32.

Therefore, when paragraph three of the syllabus of the majority implies that former R.C. 2315.19 is applicable for the purpose of allocating liability among joint tortfeasors even where there is no negligence upon the part of a plaintiff, this is in error. When there is no negligence on the part of plaintiff, R.C. 2315.19 has *no* application. Further, the use by the majority of the word "or" between the words "several" and "allocated" confuses two separate legal principles. I would change the word "or" to "and."

Accordingly, paragraph three of the syllabus should read:

"Upon a finding of negligence attributable to a plaintiff, former R.C. 2315.19 provided for several and allocated liability among joint tortfeasors party to an action. Unless there is a finding of plaintiff negligence, former R.C. 2315.19 has no application."

Since, in the case before us, there was no plaintiff negligence, joint and several liability automatically lies—that is the law. R.C. 2315.19 has no application and, hence, the interrogatories concerning allocation or apportion-

ing of fault among joint tortfeasors are never reached under R.C. 2315.19. Thus, paragraph four of the syllabus is also in error.

Perhaps the most egregious part of the majority opinion is the language that " * * * all potential tortfeasors amenable to process should be joined as defendants pursuant to Civ.R. 14 and 20, and cross-claims for contribution should also be pled in anticipation of the possibility that a plaintiff may not be found contributorily negligent. * * * "

This statement has at least two problems. First, it makes defendants (and maybe also plaintiffs) join parties that for tactical reasons they may not want to have joined. Second, the citation to Civ.R. 14 and 20 is inappropriate. Both of these rules are *permissive* both in nature and language. The majority probably bastardizes these rules to meet its desired result because it cannot use the compulsory joinder rule, Civ.R. 19.1, as by its own explicit terms, it would not apply.

The laudable objectives of the majority (avoiding inconsistent verdicts, conserving judicial resources and harmonizing statutes) can be obtained without skewering the law. If there is no contributory negligence on the part of plaintiff or if the question is submitted to the jury and the jury finds no plaintiff negligence, then R.C. 2315.19 has no further relevance, but joint tortfeasors are not precluded from using Civ.R. 49(B) and/or R.C. 2307.31 and 2307.32 which would accomplish the objectives sought by the majority. Civ.R. 49(B) fits perfectly—even down to the language of "[t]he interrogatories may be directed to one or more determinative issues whether issues of fact or mixed issues of fact and law." Further, "[t]he court *shall* give such explanation or instruction as may be necessary to enable the jury both to make answers to the interrogatories and to render a general verdict, and the court *shall* direct the jury both to make written answers and to render a general verdict." (Emphasis added.) Civ.R. 49(B).

The majority takes exception to how both the trial court and the court of appeals handled the case at bar. I am not as troubled as is the majority, given that both lower courts had to work with former R.C. 2315.19, and, in doing so, gave their own clearly defensible reading of the statute before entering their judgments. Fortunately, at least for me, a reading of the record resolves the issues in this case.

Interrogatory number one asks if " * * * DEFENDANT A.P. CONTROLS, INC. WAS NEGLIGENT?" If the jury's answer was "NO," then it was instructed to return a verdict for the defendant A.P. Controls, skip interrogatory number two and proceed to interrogatory number three—which interrogatory involved Barmet. If, however, the jury answered interrogatory number one "YES," then the jury was instructed to go to interrogatory

number two, which interrogatory asked if the negligence of A.P. Controls was a proximate cause of the death of Walter Eberly. The jury was then instructed, in interrogatory number two, "(If your answer is NO, return a verdict for the defendant A.P. Controls, Inc. Then proceed to interrogatory No. 3)." The jury was given *no* other instruction (as it was in the interrogatories determining negligence) to go to another interrogatory (*i.e.*, number three—the Barmet interrogatory) if its answer was "YES" to interrogatory number two. The jury answered "YES" to both interrogatories number one and two.

In short, the jury found A.P. Controls, Inc. to be negligent and that its negligence was a proximate cause of the death of Walter Eberly. The jury was then asked, in interrogatory number nine, what damages were sustained by the estate of Walter Eberly " * * * WHICH DIRECTLY AND PROXIMATELY RESULTED FROM THE NEGLIGENCE OF *ANY* OF THE DEFENDANTS?" (Emphasis added.) In interrogatory number nine, the jury found damages of $1,000,000. Then, most interestingly, the verdict form, signed by all eight jurors, found for plaintiffs (plural) against " * * * the Defendant [singular], the said A.P. Controls * * *."

While, after reading former R.C. 2315.19, I could have interpreted the statute in the manner that the trial court did, I find, after reviewing in detail the record and especially the interrogatories and the verdict form, that the court of appeals was right in its ultimate assessment of the case and, therefore, I would affirm the judgment of the court of appeals.

Accordingly, I concur in part and dissent in part.

SWEENEY, J., concurs in the foregoing opinion.

ALICE ROBIE RESNICK, J., concurring in part and dissenting in part. I concur with the majority as to paragraphs one and two of the syllabus, but dissent as to paragraphs three and four, and would not remand this case for a new trial.

The plaintiff was not contributorily negligent in this case and therefore the trial court improperly applied the comparative negligence statute. Former R.C. 2315.19(A)(1) provided in pertinent part that "the contributory negligence of a person does not bar the person or his legal representative from recovering damages * * * if the contributory negligence of the *person bringing the action* was no greater than the combined negligence of all other persons * * *." Additionally, former R.C. 2315.19(C) provided in pertinent part that "the court shall diminish the total amount of damages recoverable by an amount that is proportionately equal to the percentage of negligence of the *person bringing the action.*" In each instance the words "bringing the action" are used. This, of course, refers to the plaintiff and has no application

to joint tortfeasors. Therefore, in this case, because Eberly, whose estate brought the action, was not contributorily negligent, comparative negligence had no application. Eberly was not found negligent, thus there was nothing to deduct from the total amount of damages. While under the facts of this case it was error for the trial court to apply the comparative negligence statute, it was harmless error since in Ohio we recognize joint and several liability among joint tortfeasors.

The jury found that the plaintiff was damaged in the sum of $1,000,000. There is no reason to remand this case for retrial, since the damages to Eberly should remain the same regardless of the identity of the tortfeasors. In other words, if this case had been tried without the application of the comparative negligence statute, A–P Controls would have been liable for the entire amount of damages. Barmet's presence or absence should have no effect on this case and the amount of the plaintiff's recovery.

R.C. 2307.31 and 2307.32 apply to and involve only joint tortfeasors. Plaintiff's recovery should not be affected or be contingent upon a tortfeasor's right of contribution. Upon obtaining a judgment, an innocent plaintiff should be able to proceed against any tortfeasor who has been found to have proximately caused his or her injuries for the entire amount of the judgment. The main purpose to be served is to make the plaintiff whole, not to assure that a joint tortfeasor has his or her right of contribution. The right of contribution involves only the joint tortfeasors and must be pursued by them *separately and apart* from the case involving an innocent plaintiff. Thus, in this case retrial is an unnecessary and futile act since the amount of damages awarded to plaintiff should remain the same. Accordingly, I would affirm the court of appeals.

SWEENEY, J., concurs in the foregoing opinion.