OPINION
Appellant, Lisa J. Sanchez, appeals a decision of the Trumbull County Court of Common Pleas, Juvenile Division, granting appellee, Trumbull County Children Services Board, permanent custody of her son, David Sanchez. The following facts are relevant to a determination of this appeal.
On January 26, 1995, then three-year-old David Sanchez was admitted to Sharon Regional Hospital in Sharon, Pennsylvania, where he was diagnosed and admitted with a spiral fracture of his right femur. He was in the custody of his mother, appellant in this matter. His father, Rob Lawrence, was not involved in David's life. The hospital staff noticed unusual behavior on the part of appellant that included fondling the child's genitalia, wrapping wet paper towels around his penis, attempting to put ice cubes around his genitalia, and talking about oral sex while having her hands on his genitalia. Additionally, appellant was not cooperative with medical personnel in that she insisted on picking up her son after being instructed that he was not to be moved. Finally, on January 27, 1995, it reached the point where a psychiatric consultation was requested by hospital staff. Appellant was admitted to Sharon Regional Hospital on the Psychiatric Floor on January 27, 1995, where she stayed until February 15, 1995.
In the meantime, David underwent surgery and casting to repair his femur. Authorization for David's treatment came from appellant while she was herself hospitalized. Once David was released from the hospital, he was placed in a foster home. On April 2, 1995, David was adjudicated to be abused, and appellee was awarded temporary custody.
On March 29, 1996, appellee filed a motion for permanent custody. The matter was heard by a magistrate and, on February 20, 1998, the magistrate issued a decision granting appellee's motion for permanent custody. Both the guardian ad litem and appellant filed timely objections to the magistrate's report. Additionally, on April 15, 1998, a motion to intervene was filed by the Indian Defense League of America on behalf of the Northeastern United States Miami Intertribal Council. The trial court overruled the motion finding that it was not timely filed. On May 4, 1998, the trial court overruled all of the objections and approved the magistrate's decision. Then, on May 15, 1998, the trial court granted permanent custody of David Sanchez to appellee.
Appellant timely filed a notice of appeal and has set forth the following assignments of error:
 "1. The trial court erred to the prejudice of appellant-mother and son when it concluded that the court had jurisdiction over the appellant-mother Lisa J. Sanchez and her son David L. Sanchez.
 "2. The trial court erred to the prejudice of appellant-mother when it denied appellant and her son their respective rights under the Indian Child Welfare Act 25 U.S.C. § 1901 et seq.
 "3. The trial court erred to the prejudice of appellant-mother when it removed David L. Sanchez from his home in violation of their rights under the Indian Child Welfare Act 25 U.S.C. § 1912."
 "4. The trial court erred to the prejudice of appellant-mother when it entered into evidence over the objections of appellant's counsel doctor's reports obtained in violation of the confidentiality between doctor and patient without an intelligent waiver of appellant's rights and her consent.
 "5. As a matter of law the trial court erred in its ruling that a change of permanent custody is in the best interest of appellant's son and that there is clear and convincing evidence that David is adoptable and cannot be placed with either parent within a reasonable time.
 "6. The trial courts decision and findings are against the manifest weight of the evidence and contrary to law."
In the first assignment of error, appellant contends that the trial court erred when it concluded that it had jurisdiction over herself and her son. In the second assignment of error, appellant asserts that the trial court erred when it denied her and her son their respective rights under the Indian Child Welfare Act of 1978 ("ICWA"), 25 U.S.C. § 1901 et seq. In the third assignment of error, appellant submits that the trial court erred when it removed David Sanchez from his home in violation of his rights under the ICWA. These first three assignments of error are interrelated and, therefore, will be addressed in a consolidated manner.
Appellant's central argument is that the trial court did not have jurisdiction over the underlying matter of the custody of her son, David. Instead, appellant contends that both she and her son come from a bloodline that makes them eligible for membership in the Miami Tribe of Oklahoma, which is a registered Native American tribe, making David subject to the ICWA. Hence, appellant contends that proper jurisdiction would lie in a tribal court.
The ICWA was enacted due to the increasing concern over the large number of Native American children that were being placed in non-Native American foster or adoptive homes. It provides, in part:
 "[I]t is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, * * *." 25 U.S.C. § 1902.
In the present case, subchapter 1 of the ICWA is applicable as it addresses child custody proceedings. These include the termination of parental rights which is what occurred in the instant cause. A tribe has exclusive jurisdiction over child custody proceedings where the Native American child resides or is domiciled within its reservation. 25 U.S.C. § 1911(a). However, for children that do not live on the reservation, child custody proceedings may be initiated in a state court. When this is done, "the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe." 25 U.S.C. § 1911(b). Thus, the tribal court is always the preferred jurisdiction, but this preference can be overcome on a showing of "good cause." In re Robert T. (1988),200 Cal.App.3d 657, 662.
The ICWA does not, itself, define "good cause" so a state court has some discretion whether to transfer a matter to tribal court or retain jurisdiction. In the Matter of the Appeal inMaricopa County Juvenile Action No. JS-8287 (1991), 171 Ariz. 104,107, 828 P.2d 1245, 1248, citing Russel Barsh, "The Indian Child Welfare Act of 1978: A Critical Analysis," 31 Hastings L.J. 1287, 1317-18 (1980); In re Dependency Neglect of A.L. (S.D. 1989),442 N.W.2d 233, 235. To assist in interpreting the ICWA, the Department of Interior/Bureau of Indian Affairs ("BIA") promulgated "Guidelines for the State Courts; Indian Child Custody Proceedings" 44 Fed. Reg. 67,584, et seq. (Nov. 26, 1979). Although they were not published as regulations because they were not intended to have binding effect, they have been relied on for guidance by numerous courts. Juvenile Action No. JS-8287, supra, at 108; Matter of J.L.H. (S.D. 1980), 299 N.W.2d 812, 815;Batterton v. Francis (1977), 432 U.S. 416, 424.
The BIA guidelines, at 44 Fed. Reg. 67,591 (1979), allow denial of transfer of jurisdiction under the following circumstances:
 "(b) Good cause not to transfer the proceeding may exist if any of the following circumstances exists:
 "(i) The proceeding was at an advanced stage when the petition to transfer was received and the petitioner did not file the petition promptly after receiving notice of the hearing."
This provision was "designed to encourage the prompt exercise of the right to petition for transfer in order to avoid unnecessary delays." 44 Fed. Reg. 67,591
(1979).
In the case sub judice, appellant was served with the initial pleadings on February 15, 1995. She was served with the motion for permanent custody on April 5, 1996. Appellant never filed anything in writing with the trial court requesting a transfer to a tribal court. On the last day of the permanent custody trial, in October 1997, appellant orally moved to dismiss the matter based upon lack of jurisdiction. Both the North American Indian Cultural Center and the Miami Tribe had been timely notified of the proceedings in the trial court and both declined to intervene. It was not until April 15, 1998, after the magistrate's report had been issued, that Beagle Billock of the Indian Defense League of America, on behalf of the Northeastern United States Miami Intertribal Council, filed a motion to intervene. This motion was overruled by the trial court as being untimely filed. Additionally, the Northeastern United States Miami Intertribal Council was not recognized as David's "Indian Tribe" as defined by the ICWA, 25 U.S.C. § 1903(8).
The trial court held that good cause existed not to transfer this case to a tribal court because the petitioner did not file a petition promptly after receiving notice of the hearing and the proceeding was already at an advanced stage. We agree. Appellant had ample opportunity to file a petition to transfer the case in a timely manner but failed to do so.
This decision is consistent with those few decisions from other courts which have had the opportunity to address whether or not a request for transfer was timely. In Juvenile Action No.JS-8287, supra, the Arizona Court of Appeals affirmed the trial court's holding that a petition to transfer was untimely where it was filed by the Pueblo tribe two years after receiving notice of dependency proceeding. In In re Robert T., supra, the California Court of Appeals held that a motion to transfer was properly denied where the Santo Domingo tribe's petition was filed sixteen months after it had received notice. In In re Dependency Neglect of A.L., supra, a one year delay was held to be too long, and in In the Interest of A.T.W.A. (1994), 899 P.2d 223, the Colorado Court of Appeals held that a three and one-half year delay in filing a petition to transfer was too long.
In the present case, appellant's delay of almost one and one-half years from when she first was notified of the permanent custody proceeding was too long, especially because she waited until the end of the permanent custody trial. Hence, the trial court, within its discretion, correctly concluded that good cause existed for it to deny appellant's oral motion to dismiss the case.
Accordingly, appellant's first three assignments of error are without merit.
In the fourth assignment of error, appellant contends that the trial court erred when it admitted into evidence doctors' reports and hospital records pertaining to appellant which were obtained in violation of the confidentiality between doctor and patient since an intelligent waiver had not been given. Specifically, appellant asserts that the Trumbull County Children Services Board caseworker obtained written releases from appellant while appellant was hospitalized on the Psychiatric Floor of Sharon Regional Hospital. Appellant submits that she was suffering diminished capacity and was in no physical condition to give informed consent or waive her privilege of confidentiality with respect to the doctors' reports and hospital records.
An analysis of this issue must begin with R.C. 2317.02(B) which provides the general rule that a physician may not testify about communications made with a patient. One of the exceptions, however, occurs when the patient gives express consent and waives the physician-patient privilege. R.C. 2317.02(B)(1)(a)(i). In the present case, it is undisputed that appellant executed a release of information while she was hospitalized on the Psychiatric Floor of Sharon Regional Hospital. Appellant contends, however, that this alleged waiver was legally ineffective since she was hospitalized at the time of its execution in a psychiatric ward and, therefore, her mental abilities at that time must be questioned. We agree.
There was evidence in the record that appellant, while hospitalized, suffered delusions, hallucinations, and paranoia. She was taking at least three different psychotropic medications, including Ativan, Haldol, and Cogentin. Under these circumstances, we believe it was improper to attempt to obtain appellant's waiver without at least providing her with legal representation, although we note that appellant's treating physician testified that appellant was competent.
However, while the records and reports from Sharon Regional Hospital should not have been considered by the trial court, there was additional medical evidence of appellant's mental health problems that was properly before the court and totally uncontroverted. Specifically, the testimony of Dr. Joseph A. Spera, a licensed psychologist. Dr. Spera was appointed by the trial court at appellant's request to perform an independent evaluation of appellant's mental health and parenting capabilities.
Dr. Spera testified at length regarding appellant's mental problems and her inability to parent a child. He stated that she had a chronic severe mental disability making her unable to parent into the foreseeable future. This unrebutted testimony was admissible pursuant to Juv.R. 32(A) which provides, in relevant part:
 "(A) Social history and physical or mental examination: availability before adjudication. "The court may order and utilize a social history or physical or mental examination at any time after the filing of a complaint under any of the following circumstances:
 "(1) Upon the request of the party concerning whom the history or examination is to be made;
"* * *
 "(3) Where a material allegation of a neglect, dependency, or abused child complaint relates to matters that a history or examination may clarify; * * *"
In In re Green (1984), 18 Ohio App.3d 43, the Montgomery County Court of Appeals held that when a court orders a mental examination pursuant to Juv.R. 32(A), it may utilize the results in determining the custody of the child. Id. at 44-45. This is clearly the only logical result as there would be no point in the court ordering a mental examination if it could not utilize the results.
Based upon the foregoing analysis, the trial court erred when it permitted the admission of any of the doctors' reports or hospital records that had been obtained as a direct result of appellant's waiver that she executed while admitted to the psychiatric ward of Sharon Regional Hospital. However, this error was harmless in light of the uncontroverted evidence of appellant's mental health problems that were properly before the court. Thus, appellant's fourth assignment of error is without merit.
In the fifth assignment of error, appellant asserts that the trial court erred when it ruled that a change of permanent custody was in the best interest of her son and, further, that it was error to hold that there was clear and convincing evidence that David was adoptable and could not be placed with either parent within a reasonable time.
In determining the best interests of a child in a permanent custody proceeding, a trial court must consider the factors set forth in R.C. 2151.41.4(D). The version of that statute applicable to the present case listed the following nonexclusive factors:
 "(1) The interaction and interrelationship of the child with his parents, siblings, relative, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through his guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency."
It is clear from a review of the transcript that evidence was presented on each of these items. Moreover, it is apparent from the trial court's judgment entry that each of these items were considered by the trial court in reaching its conclusion that permanent custody of David should be with appellee. Similarly, there was evidence presented that David would not be able to be placed with either parent within a reasonable time.
Under the circumstances, we cannot conclude that the trial court abused its discretion with respect to appellant's claims. Hence, appellant's fifth assignment of error is without merit.
In the sixth assignment of error, appellant contends that the trial court's decision was against the manifest weight of the evidence. In Eberly v. A-P Controls, Inc. (1991), 61 Ohio St.3d 27, the Supreme Court of Ohio stated:
 "Generally, this court will not upset `"(j)udgments supported by some competent, credible evidence (* * *) as being against the manifest weight of the evidence."' Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80 * * *, quoting C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279 * * *, syllabus." (Parallel citations omitted.) Id. at 30.
Appellant's argument centers on her own ability to provide for her son. However, as the trial court pointed out, appellant "failed continuously and repeatedly" to remedy the conditions that caused David to be removed from her home in the first place. She never completed the Case Plan goals and objectives that had been approved by the trial court. Moreover, the trial court held that the chronic mental illness of appellant was so severe that she was unable to provide an adequate home for David at that time or, as anticipated, within the next year. These conclusions were all supported by evidence in the record.
Accordingly, the trial court's decision was not against the manifest weight of the evidence. Appellant's sixth assignment of error is without merit.
The judgment of the trial court is hereby affirmed.
FORD, P.J., concurs,
CHRISTLEY, J., concurs in judgment only.