OPINION
In this case, Ronald and Christine Stass appeal from a jury verdict on their underinsured motorist claims against Shelby Insurance Company. Shelby also cross-appeals, contesting the trial court's rejection of Shelby's claim for reimbursement of medical payments made to Mr. Staas.
The present action arose from an auto accident which took place on May 10, 1995. At the time, Mr. Staas' Chevrolet truck was rear-ended by an auto driven by Michael McAllister. Subsequently, McAllister's insurance company paid its $12,500 limits to Mr. and Mrs. Staas, who then tried to collect additional damages from Shelby. Both sides agreed that Mr. Staas had been injured in the collision, but disagreed about the extent of his injuries. A somewhat unusual twist also existed, in that Mr. Staas had received injuries in a second accident which occurred on November 6, 1995.
After hearing the evidence, the jury awarded $10,308 to Mr. Staas and $2,000 to Mrs. Staas for her consortium claim. Since these amounts were less than McAllister's policy limits, the trial court entered judgment in Shelby's favor. Mr. and Mrs. Staas then timely appealed, raising the following single assignment of error:
The trial court erred to the prejudice of plaintiffs by failing to properly instruct the jury on the defendant's burden of proof.
Shelby filed a timely notice of cross-appeal, and also raised just one cross-assignment of error, as follows: The trial court erred to the prejudice of the Defendant by directing a verdict in favor of the Plaintiffs on Defendant's counterclaim for reimbursement of medical expenses.
After considering the arguments of the parties, we find the assignment of error and the cross-assignment of error without merit. Accordingly, the judgment of the trial court is affirmed. A brief discussion of the respective claims of the parties follows.
 I
As we said, Mr. and Mrs. Staas claim the trial court improperly instructed the jury on the defendant's burden of proof. Specifically, they contend that the trial court should have given the following instruction:
 The defendant claims that some of the injuries the plaintiff claims are a result of a second accident that occurred on November 6, 1995. Where the conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more of the parties, such as the defendant, seeks to limit its liability on the ground that the harm is capable of apportionment, the burden of proof as to the apportionment is upon the defendant.
This instruction is based on Pang v. Minch (1990), 53 Ohio St.3d 186, in which the Ohio Supreme Court adopted 2 Restatement of the Law2d, Torts (1965), Section 433(B)(2). According to Pang, Section 433(B)(2) applies "where a single, indivisible injury is proximately caused by the successive tortious acts of multiple defendants." Id. at 198. In such situations, if the plaintiff shows that an injury occurred and that each defendant's tortious act was a substantial factor in producing the injury, the defendants have the burden of apportioning the harm in order to avoid joint and several liability. Id. The Ohio Supreme Court has also said that whether an actor's conduct is a substantial factor in producing an injury is a factual question to be decided by the trier of fact. Queen City Terminals, Inc. v. Gen. Am. Transp.Corp. (1995), 73 Ohio St.3d 609, 618.
According to the Plaintiffs' evidence at trial, Mr. Staas was diagnosed with cervical, lumbar, and thoracic sprain/strain following the accident on May 10, 1995. Staas first sought treatment at an emergency room and then saw a chiropractor from May 15, 1995 though October 31, 1995, or about one week before the second accident. At that time, Staas had not yet been released from treatment, but had shown (in the words of his chiropractor), "dramatic improvement."
The second accident occurred on November 6, 1995, and Staas was diagnosed by the chiropractor with injuries in the same areas of the body, i.e., the cervical, lumbar, and thoracic spine. According to the chiropractor, both accidents caused trauma to the spine and the conditions he treated were related to both accidents. In particular, the chiropractor said that it was extremely difficult to distinguish between the injuries caused by each accident.
In contrast, the defense claimed that the injuries from the first accident were not permanent and were completely resolved before the second accident took place. To support this view, the defense presented evidence from a neurologist who had examined Mr. Staas and had reviewed the medical records. This expert testified unequivocally that the injuries completely resolved within a few weeks to a few months after the first accident — in other words, before the second accident.
The situation in Pang was similar factually, in that the plaintiff received injuries to his neck and back in three different auto accidents. At trial, the jury was instructed that the plaintiff had the duty of establishing the extent to which each of the three accidents contributed to his injury. Additionally, the jury was told that it could find against each defendant only to the extent and in the proportion that his or her respective negligence proximately contributed to the plaintiff's injury. 53 Ohio St.3d at 191.
The jury then returned several, not joint, verdicts against each defendant. One defendant was found eighty percent negligent and was, therefore, required to pay $60,000. The two remaining defendants were liable for ten percent each. On appeal, the Ohio Supreme court adopted Section 433(B)(2), and held, as was noted, that the plaintiff had to establish that he suffered an injury and that each defendant's tortious act was a substantial cause in producing the injury. After plaintiff met this burden, the evidence was sufficient to obtain joint and several judgments against all three defendants. Thereafter, the defendants would have the burden of apportioning the harm among themselves. Id. at 198-99.
In the present case, the trial judge said before the start of the defense case that he would not give a special instruction based on Pang. As support for his decision, the judge cited the Ohio Supreme Court decision in Eberly v. A-P Controls, Inc.
(1991), 61 Ohio St.3d 27. Specifically, the judge interpretedEberly as precluding apportionment of fault to non-parties. Therefore, because the defendants from Mr. Staas' second accident were not parties, the judge did not feel an instruction on apportionment was warranted. Instead, he gave standard instructions on burden of proof, proximate cause, and damages.
Although we do not feel that Eberly controls, we do agree with the trial court's decision not to give the special instruction. In Eberly, the trial court directed a verdict in favor of an employer on an intentional tort claim, and also told the jury that the employee (who was deceased) was not contributorily negligent. Nonetheless, the trial court included the employer in interrogatories which asked the jury to evaluate the respective percentages of negligence of the employer and the three remaining defendants. The jury found the employer 90% negligent, found one of the remaining defendants 10% negligent, and awarded damages of one million dollars. As a result, the trial court entered judgment against the remaining defendant for one hundred thousand dollars.
When the case was appealed, the court of appeals found plain error in the application of the comparative negligence statute (R.C. 2315.19), and entered judgment against the remaining defendant for the total judgment, i.e., one million dollars. Id.
at 29. On further appeal, the Ohio Supreme Court agreed that the trial court had erred by including the employer in the interrogatories. The supreme court's decision was based on the fact that neither the former nor the current version of R. C.2315.19 allowed for apportionment of negligence among non-parties to the action. Id., paragraph one of the syllabus. Additionally, the court held that R.C. 2315.19 did not apply since the employee was not contributorily negligent. Id. at 34. As a remedy, the court remanded the case for a new trial against the remaining defendant only. This particular remedy was chosen because the court felt that the interrogatories may have improperly led the jury to believe that the remaining defendant would be liable for only ten percent of the damages. Id. at 36.
In the course of its decision, the supreme court discussed the interplay between R.C. 2315.19 and the contribution statutes. In this regard, the court noted that the provision in R.C. 2315.19
for several or allocated liability among joint tortfeasors is triggered only by a finding of fault on the plaintiff's part; otherwise, joint and several liability exists. Id. at 35. In the latter situation, interrogatories allocating fault among multiple tortfeasors determine their contribution rights. To avoid the possibility of inconsistent results, to conserve judicial resources, and to harmonize R.C. 2315.19 with the contribution statutes, the court said that all potential tortfeasors who are amenable to process should be joined in cases which potentially involve multiple tortfeasors and plaintiff negligence. Id.
Furthermore, cross-claims for contribution should be filed in case the plaintiff is not found contributorily negligent. Id.
Because the present case does not involve plaintiff negligence, Eberly is not controlling. On the other hand, the reasoning in Eberly is persuasive, particularly in light of more directly pertinent authority. Specifically, in Huston v.Konieczny (1990), 52 Ohio St.3d 214, the Ohio Supreme Court considered the application of burden-shifting in alternative liability cases. Alternative liability occurs where two or more parties commit tortious acts, but harm is caused by only one, and uncertainty exists as to which act caused the harm. Under this theory, which is based on 2 Restatement of the Law 2d Torts, Section 433(B)(3), the burden shifts to each tortious actor to prove he has not caused the harm. Id. at 218-19.
Of particular relevance is the court's comment in Huston that "[i]n order for the burden of proof to shift from the plaintiffs * * * all tortfeasors should be before the court if possible." Id.
at 219. Although the term "should" does not mean "must," the court did note that in all cases in which Section 433(B)(3) had been applied, all of the actors had been joined as defendants.Id., citing Comment H to Section 433(B)(3). Likewise, other courts have refused to apply Section 433(B)(3) burden-shifting in the absence of another defendant to whom the burden could or should shift. See, Burke v. Schaffner (1996), 114 Ohio App.3d 655,663-64; and Fiorella v. Ashland Oil, Inc. (1993), 92 Ohio App.3d 411,416 (noting that courts generally require joinder of all potential defendants for alternative liability to apply).
Alternative liability under Section 433(B)(3) is quite similar to the theory of liability under Section 433(B)(2) that was adopted in Pang. In either situation, since allocation of harm is difficult, the burden of proof shifts to prevent wrongdoers from escaping liability to innocent plaintiffs. Pang,53 Ohio St.3d at 198; Minnich v. Ashland Oil Co., Inc. (1984),15 Ohio St.3d 396, 397. Therefore, because joinder of all defendants is considered appropriate in cases of alternative liability, it is equally appropriate here.
We also note that we have not found any case in which the trial court applied Pang or gave an instruction based on Pang in the absence of all potential defendants. See, e.g., Queen CityTerminals, Inc. v. Gen. Am. Transp. Corp. (1995), 73 Ohio St.3d 609,618, (all wrongdoers were part of the case and the jury was instructed on the substantial factor standard); and Pancoe v. Dye
(Oct. 21, 1992), Summit App. Nos. 15446 and 15583, unreported ("substantial factor" instruction was given where builder, developer, and management company were all sued for damages arising from negligence in selling and constructing a home). As we said, although all defendants do not have to be joined before an action can proceed, they must be joined if a plaintiff wants to take advantage of the burden-shifting principles in Pang. Accordingly, we do not find that the trial court erred by refusing to give the burden-shifting instruction.
Based on the proof at trial, we find that the standard instructions given by the court fairly and accurately informed the jury of the potential issues. Specifically, the defense presented evidence from which the jury could conclude that Mr. Staas' injuries were completely resolved before the second accident. The amounts awarded by the jury were also consistent with this defense theory.
Furthermore, even if the trial court had erred in failing to give the requested instruction, Plaintiffs may not take advantage of error which they invited or induced.
Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co., Lincoln-MercuryDiv. (1986), 28 Ohio St.3d 20, paragraph one of the syllabus;Campbell v. Johnson (1993), 87 Ohio App.3d 543, 550. In this regard, the following procedural history is relevant.
When the original complaint was filed, it included claims against McAllister, the driver of the car involved in the first accident. The complaint also included claims against two other defendants, Eric and Michael Williams, who were allegedly responsible for injuries Mr. Staas received in the second accident. However, the original complaint did not assert any connection between the two accidents. As a result, Eric and Michael Williams asked the court to sever the claims against them. In particular, these defendants focused on improper joinder, caused by the lack of common issues or law or fact connecting the two accidents. The Williams defendants also asked the court to transfer the claims against them either to the county where the accident happened (Marion) or to the county where they lived (Morrow)., Plaintiffs opposed the motion to transfer, and also asked for permission to file an amended complaint. In paragraph 8 of the proposed amended complaint, Plaintiffs alleged that the injuries from both accidents were the same, and that determining which accident caused the injuries would be impractical. The trial court granted the motion to amend the complaint and overruled the motions to sever and to transfer, based on State ex rel. Starnerv. DeHoff (1985), 18 Ohio St.3d 163. Notably, in Starner, the Ohio Supreme Court said successive tortfeasors may be properly joined in a single action if a single injury has resulted, and also said that trial courts do not have discretion under Civ. R. 21 to sever properly joined claims. Id. at 164.
After the Plaintiffs filed their amended complaint, the action proceeded against all defendants. Subsequently, Plaintiffs filed another amended complaint, on May 1, 1998. This complaint added two subrogated insurers, but omitted the previous paragraph 8, i.e., the complaint no longer alleged that the injuries from the two accidents were indivisible. Consequently, on May 6, 1998, Eric and Michael Williams filed a second motion to sever the claims against them and to transfer the action to either Marion or Morrow County. This time, Plaintiffs did not oppose the motion, nor did they ask to further amend the complaint.
The trial court then granted the motion to sever and the case went to trial only on the claims arising from the first accident. Given these facts, we believe Plaintiffs are bound by the theory they chose to pursue. If Plaintiffs felt the injuries from the two accidents were, in fact, indivisible, they should have kept the appropriate allegations in their complaint and should have contested the motion to sever. While Plaintiffs did ask for a burden-shifting instruction in their final pre-trial statement, this action was inconsistent with the allegations in the complaint and was also inconsistent with their tacit consent to severance of claims arising from the second accident. Presumably, Plaintiffs had strategic reasons for their actions. Nonetheless, they may not profit from a choice that they invited. Accordingly, even if the trial court should have given a burden-shifting instruction, we find no basis for overturning the jury verdict.
In light of the preceding discussion, Plaintiffs' assignment of error is overruled.
 II
In the cross-assignment of error, Shelby contends that the trial court erred in directing a verdict against Shelby on its claim for reimbursement of medical expenses. No dispute exists about the amount of the payment ($5,000) or the relevant policy provisions. Instead, the dispute centers on whether Shelby's claim is against public policy, or violates the rule that insurers may not recover on subrogation claims until injured parties are fully compensated for a loss.
Documents submitted to the trial court indicate that Mr. and Mrs. Staas paid Shelby separate premiums for medical payments coverage and uninsured/underinsured motorist coverage. Limits for these coverages, respectively, were $5,000 and $100,000 per accident. The medical payments provision in the Shelby policy does not have a specific subrogation provision. However, under the "General Provisions" section, the policy says that:
 If we make a payment under this policy and the person to whom payment was made has a right to recover damages from another, we shall be subrogated to that right.
* * *
 If we make a payment under this policy and the person to whom or for payment is made recovers damages from another, that person shall:
1. Hold in trust for us the proceeds of the recovery;
2. Reimburse us to the extent of our payment.
As originally written, the medical payments portion of the policy stated that "[n]o payment will be made unless the injured person or that person's legal representative agrees in writing that any payment shall be applied toward any settlement or judgment that person receives under part A [liability coverage] or part C [uninsured/underinsured motorists coverage]." However, a 1991 endorsement is attached to the policy and amends this section. Under the endorsement, an insured must agree in writing to apply medical payments to liability settlements or judgments, but need not make the same agreement concerning medical payments and settlements or judgments in uninsured or underinsured motorist cases.
The trial court originally denied Shelby's motion for summary judgment on the medical payments claim and then later directed a verdict for Mr. and Mrs. Staas on this issue. In particular, the court relied on two Ohio Supreme Court cases which had refused to allow medical payments to be deducted from uninsured motorist benefits due under the same policy. See, Shearer v. MotoristsMut. Ins. Co. (1978), 53 Ohio St.2d 1, 371 N.E.2d 210 and GrangeMut. Cas. Co. v. Lindsey (1986), 22 Ohio St.3d 153.
In Shearer, the Ohio Supreme Court explicitly stated in its syllabus that:
 [t]he uninsured motorist coverage required to be offered by R.C. 3937.18 in all automobile or vehicle liability policies issued in the state of Ohio cannot be diluted or diminished by payments made to the insured pursuant to the medical payment provision of the same contract of insurance. A contract condition providing for a deduction for medical payments paid under another portion of the insurance contract is in derogation of the public policy and purpose underlying R.C. 3937.18.
 53 Ohio St.2d at 1. The public policy in question was that injured policyholders should be placed in the same position they would have occupied if the tortfeasor had liability insurance. Id.
at 7. In Lindsey, the supreme court reiterated the position it had taken in Shearer. 22 Ohio St.3d at 155-56.
On appeal, Shelby has tried to distinguish these two cases in a number of ways, all of which are unpersuasive. First, Shelby says that its claim is not an impermissible "setoff," but is instead a "reimbursement" for payments that Shelby is contractually entitled to recover under a subrogation provision. We find this a distinction without a difference. Specifically, no matter which "method" is used, the result is a reduction of the insurer's potential obligation for the uninsured motorist claim. To take a concrete example — assume an insurer has paid $5,000 for medical payments, and a jury finds the insured is entitled to $10,000 on an uninsured motorist claim. Under "set-off," the insurer could deduct the $5,000 from the amount due, meaning that the insurer would owe a total of $5,000 for the uninsured motorist claim. Likewise, if the insurer is "reimbursed" for the $5,000 it already paid, the insurer's total payment for the uninsured motorist claim would still be $5,000, i.e., the insurer hands the insured a check for $10,000 and receives $5,000 in return. As we said — this is a distinction without a difference.
More important, the Ohio Supreme Court has not made such a distinction. In this regard, we note that Shearer involved a "setoff" provision contained within an uninsured motorist agreement. 53 Ohio St.2d at 2. This type of clause is also called a "nonduplication clause," and is used by insurers to restrict coverage. See, e.g., Jarvis v. Wayne Mut. Ins. Co. (1995),105 Ohio App.3d 145. As we mentioned, the Shearer court refused to enforce the clause because the setoff or deduction of medical payments violated public policy.
By contrast, the policy in Lindsey gave the insurer subrogation rights for payments made under either the medical payments coverage or the uninsured motorist coverage.22 Ohio St.3d at 154. The policy also had a nonduplication clause which allowed medical payments to be deducted from uninsured motorist payments. Id. Among other things, the insurer in Lindsey argued that the contractual right of subrogation changed the result which would otherwise be required by Shearer. However, the supreme court disagreed, stating that:
 an insurance policy clause which provides to the insurer a contractual right of subrogation as to payments made under the medical payments portion of the policy does not enable the insurer to avoid obligations it incurs pursuant to the uninsured motorist provisions of the same insurance policy. Thus, even where the policy provides for subrogation as to payments made as medical payments coverage, a contract provision which would, in essence, enable the insurer to set off such medical payments against amounts due to the insured pursuant to uninsured motorist coverage is void as in derogation of the public policy and purpose underlying R.C. 3937.18.
 Id. at 155.
We believe these are clear statements by the Ohio Supreme Court, and we are bound to follow them. Furthermore, other courts have denied recovery for insurers in both uninsured and underinsured motorist cases. See, e.g., Jarvis,105 Ohio App.3d at 147 (underinsured); Rhodes v. State Farm Mut. Auto. Ins. Co.
(Jan. 12, 2000), Mahoning App. No., 98 CA 82, unreported, pp. 8-9 (underinsured); Walter v. Wayne Mut. Ins. Co (Mar. 4, 1998), Wayne App. No. 97CA0030, unreported (uninsured); Reineck v. WestfieldNat. Ins. Co., (Mar. 21, 1997), Huron App. No. H-96-037, unreported, discretionary appeal not allowed, 79 Ohio St.3d 1450
(underinsured); and Selby v. Wayne Mut. Ins. Co. (Nov. 2, 1994), Fairfield App. No. 94 CA 08, unreported, discretionary appeal not allowed (1996), 77 Ohio St.3d 1481 (uninsured). Therefore, the fact that the present case involves underinsured motorist coverage is also not a relevant distinction.
As a further point, we note that the 1991 endorsement to the Shelby insurance policy is consistent with the supreme court's prior rejection of nonduplication clauses. Specifically, in 1991, Shelby eliminated the provision requiring an insured to agree, in writing, to set off medical payments from judgments or settlements received in uninsured/underinsured motorist cases. However, at the same time, Shelby retained the subrogation clause in the general provisions section. In other words, Shelby tried indirectly to do what it could not do directly, i.e., receive credit or reimbursement for medical payments made to its own insureds in uninsured/underinsured motorist situations. Consequently, we find the trial court correctly rejected Shelby's claim for reimbursement of medical payments.
Because Shearer and Lindsey are controlling, we need not address Shelby's remaining argument, which relies on Peterson v.Ohio Farmers Ins. Co. (1963), 175 Ohio St. 34. According to Shelby, Peterson gives subrogated insurers a right of priority in proceeds of a recovery. In a recent decision, we discussedPeterson as well as subsequent conflicting supreme court authority that prohibits insurers from recovering payment unless insureds are fully compensated for their injuries. See, discussion in Porter v. Tabern (Sept. 17, 1999), Champaign App. No. 98-CA-26, unreported, pp. 5-12. In Porter, we concluded that the trend is to deny priority to subrogated interests where the result is less than full recovery for an insured. Id. at 12.
Consistent with this theory, Shelby argues its subrogation claim should be allowed because Mr. Staas will otherwise receive a double recovery. This argument has some facial merit. Specifically, the jury in this case was asked to determine the damages caused by the tortfeasor's negligence, including pain and suffering, lost earnings, reasonable medical expenses, and so on. The jury then decided that the total amount of damages was approximately equal to the amount already collected from the tortfeasor. Therefore, since Mr. Staas had already received $5,000 for medical payments from Shelby, an argument could be made that Staas received dual compensation — or more than full compensation for his damages. We consider this fact irrelevant, for two reasons.
First, unlike the present case, Peterson did not involve medical payments, uninsured/underinsured motorists insurance, or the public policy inherent in R.C. 3937.18. Second, in Lindsey,
the Ohio Supreme Court recognized that its holding would result in a "double recovery" for the insured. 22 Ohio St.3d at 155. However, the court felt this was not important, since the medical payments coverage was independent of the uninsured motorist coverage. Id. at 155-56. Of particular significance was the fact that separate premiums were paid for each coverage. Id. at 156.
We agree with this logic. If insurers only want to pay for one type of coverage, they should charge one premium. Likewise, if the insurer charges two premiums, a reasonable interpretation is that the insurer intends to pay under both types of coverage and does not intend to completely avoid its obligation for one of the coverages. Accordingly, Shelby's cross-assignment of error is overruled.
In light of the preceding discussion, the assignment of error and the cross-assignment of error are overruled and the judgment of the trial court is affirmed.
GRADY, P.J., and YOUNG, J., concur.