JOHNSON, APPELLEE, *v.* PORTER, ADMX., APPELLANT.

[Cite as Johnson *v.* Porter (1984), 14 Ohio St. 3d 58.]

(No. 83-1664—Decided December 5, 1984.)

*Messrs. Ugan & Relic* and *Mr. Grant D. Relic,* for appellee.

*Messrs. Snyder, Neff & Chamberlin, Mr. Owen C. Neff, Mr. James A. Ciocia* and *Mr. William J. Day,* for appellant.

HOLMES, J. This matter presents the issue of whether R.C. 2317.03, the "dead man's" statute, has been either totally or partially abrogated by the adoption of Evid. R. 601 and 804(B)(5).

In pertinent part, R.C. 2317.03 states as follows:

"A party shall not testify when the adverse party is the guardian or trustee of either a deaf and dumb or an insane person or of a child of a deceased person, or is an executor or administrator, or claims or defends as heir, grantee, assignee, devisee, or legatee of a deceased person * * *[.]"[1]

---

[1] The remainder of R.C. 2317.03 lists the following exceptions:

"(A)  As to facts which occurred after the appointment of the guardian or trustee of an insane person, and, in the other cases, after the time the decedent, grantor, assignor, or testator died;

"(B)  When the action or proceeding relates to a contract made through an agent by a person since deceased, and the agent is competent to testify as a witness, a party may testify on the same subject;

"(C)  If a party, or one having a direct interest, testifies to transactions or conversations with another party, the latter may testify as to the same transactions or conversations;

Evid. R. 601 provides that "[e]very person is competent to be a witness" with certain limited exceptions which are not applicable here.

Historically at common law, in England and in the United States, parties to a lawsuit and all other persons having a direct pecuniary or proprietary interest in the outcome of the action were excluded from testifying in the matter.[2] A party could not testify in his own behalf nor could he be required to testify if called by his adversary. The rule was thus a combination of disqualification and privilege.[3] The theory advanced for disqualifying a litigant from testifying in his own behalf was that such person would likely perjure himself in support of his cause, and therefore, he should be prevented from giving testimony.

It appears that a great deal of argument against the disqualification rule ensued based on the premise that the rule underestimated the ability of judges and jurors to detect perjury, and that such rule created more injustice than it prevented. The rule disqualifying interested persons was eliminated in England by an Act of Parliament in 1943. Subsequently in 1951, a law was enacted which abolished the disqualification of parties, and those on whose behalf a suit was brought.[4]

"(D) If a party offers evidence of conversations or admissions of the opposite party, the latter may testify concerning the same conversations or admissions; and, if evidence or declarations against interest made by an insane, incompetent, or deceased person has been admitted, then any oral or written declaration made by such insane, incompetent, or deceased person concerning the same subject to which any such admitted evidence relates, and which but for this provision would be excluded as self-serving, shall be admitted in evidence if it be proved to the satisfaction of the trial judge that the declaration was made at a time when the declarant was competent to testify, concerning a subject matter in issue, and, when no apparent motive to misrepresent appears;

"(E) In an action or proceeding by or against a partner or joint contractor, the adverse party shall not testify to transactions with, or admissions by, a partner or joint contractor, since deceased, unless they are made in the presence of the surviving partner or joint contractor, and this rule applies without regard to the character in which the parties sue or are sued;

"(F) If the claim or defense is founded on a book account, a party may testify that the book is his account book, that it is a book of original entries, that the entries therein were made in the regular course of business by himself, a person since deceased, or a disinterested person, and the book is then competent evidence in any case, without regard to the parties, upon like proof by any competent witness;

"(G) If after testifying orally, a party dies, the evidence may be proved by either party on a further trial of the case, whereupon the opposite party may testify to the same matters;

"(H) If a party dies and his deposition is offered in evidence, the opposite party may testify as to all competent matters therein.

"This section does not apply to actions for causing death, or actions or proceedings involving the validity of a deed, will or codicil. When a case is plainly within the reason and spirit of this section and sections 2317.01 and 2317.02 of the Revised Code, though not within the strict letter, their principles shall be applied."

[2] See 2 Wigmore, Evidence (Chadbourn Rev. Ed. 1979), Sections 575 through 577.

[3] See McCormick, Evidence (2 Ed. 1972), Section 65.

[4] For an excellent historical analysis on "dead man's" statutes, see Ray, Dead Man's Statutes (1963), 24 Ohio St. L.J. 89.

In the United States, the movement for reform or abolishment of the common-law rule of disqualification was strengthened by the British Acts. However, only compromise laws were generally effected throughout the states enacting such evidentiary rule changes.[5] Accordingly, statutes in most states which enacted reform legislation provided that the disqualification still remained as to testimony of parties and interested persons concerning a transaction or communication with a person since deceased in a suit prosecuted or defended by the executor or administrator of the decedent. There were many variations to be found within the state statutes which eliminated the disqualifications.[6] Also, there was a marked variance to be found among state courts in construing their statutes as to what would be considered disqualified testimony under the specific Act.[7]

In Ohio, the disqualifying statute was enacted in broad form as noted in the following language: "A party shall not testify when the adverse party is * * * an executor or administrator, or claims or defends as heir, grantee, assignee, devisee, or legatee of a deceased person * * *." Thus, the Ohio provision extended the protection to anyone who derived his title or sustained damages from an act by, through, or under the decedent. Such persons included not only executors and administrators but heirs, next of kin, legatees, devisees and assignees.

The Ohio statute has been held applicable to civil suits or proceedings, contract actions, as well as tort actions.[8] However, there are a number of exceptions to the application of the section including the specific exclusions that it does not apply to actions for causing death, or proceedings involving the invalidity of a deed or codicil.

In 1980, this court through its authority under Section 5(B), Article IV of the Ohio Constitution, adopted the Rules of Evidence, which were subsequently submitted to the General Assembly. No concurrent resolution having been adopted by the General Assembly, the rules became effective on July 1, 1980.

As previously set forth, Evid. R. 601 and R.C. 2317.03 deal with competency of witnesses. In addition, the aforestated constitutional amendment provides that "* * * [a]ll laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." This court has stated that rules of witness competency are procedural and do not create, modify, or abridge substantive rights. See *State* v. *Waller* (1976),

---

[5] Wigmore, *supra,* at Section 578.

[6] McCormick, *supra,* at Section 65.

[7] See Annotation (1975), 67 A.L.R. 3d 924; Annotation (1971), 35 A.L.R. 3d 955; Annotation (1968), 18 A.L.R. 3d 606; Annotation (1952), 21 A.L.R. 2d 1013.

[8] See *Canary* v. *Wallace* (1971), 25 Ohio St. 2d 244 [54 O.O.2d 368]; *Parks* v. *Ford* (1965), 4 Ohio St. 2d 61 [33 O.O.2d 432]; *Hawkins* v. *Hawkins* (1964), 176 Ohio St. 469 [27 O.O.2d 435]; *In re Scholl* (1959), 170 Ohio St. 205 [10 O.O.2d 138]; *In re Renee* (1953), 159 Ohio St. 37 [50 O.O. 20]; *Fielder* v. *Ohio Edison Co.* (1952), 158 Ohio St. 375 [49 O.O. 265].

47 Ohio St. 2d 52 [1 O.O.3d 32]. See, also, Ladd, Uniform Evidence Rules in the Federal Courts (1963), 49 Va. L. Rev. 692; Moore & Bendix, Congress, Evidence and Rulemaking (1974), 84 Yale L.J. 9.

Therefore, we hold that the adoption of Evid. R. 601 in 1980 effectively abrogated R.C. 2317.03 which was in conflict with the evidentiary rule. The effect of adopting this particular rule of law is best determined by reference to the Staff Note to Evid. R. 601.[9]

The Staff Note sets forth a most significant point in support of the position that the rule abrogated R.C. 2317.03. The note states that concomitant to the adoption of Evid. R. 601 was the adoption of Evid. R. 804(B)(5).[10] The latter rule permits the introduction of hearsay statements made by a deceased person to third persons which tend to rebut the testimony of an adverse party that is admissible under Evid. R. 601. It is our conclusion that a lawful application of Evid. R. 601 and 804(B)(5) creates an evidentiary balance resulting in a fair and just approach toward the judicial effort to determine truth. Evid. R. 601 preserves one's competency to testify, while Evid. R. 804(B)(5) affords the adverse party an opportunity to introduce evidence which would otherwise be considered hearsay, to rebut such testimony. It is also significant that two appellate courts have adopted the view that the "dead man's" statute, R.C. 2317.03, has been abrogated by Evid. R. 601. See *Simandl, supra; Bilikam* v. *Bilikam* (1982), 2 Ohio App. 3d 300. See, also, Blackmore & Weissenberger, Ander-

---

[9] The Staff Note to Evid. R. 601 includes the following:

"Rule 601 of necessity, varies significantly from Federal Evid. R. 601 which declares all witnesses competent in federal matters, except as otherwise provided in the Federal Rules of Evidence, and also declares that in state matters, the competency of witnesses is to be determined by state law. Rule 601 states the general rule of witness competency for Ohio. In so doing, the rule embodies certain prior Ohio practices and discards others.

"One of the purposes of Federal Evid. R. 601 was to preserve statutes such as the dead man's statute in state matters in those states where such a statute existed. Ohio has chosen to eliminate the exclusion. Rule 601 supersedes R.C. 2317.03, the dead man's statute. By declaring all witnesses to be competent and not providing an exception for the exclusionary provisions of the dead man's statute, a conflict between the rule and the statute is created and the statute is superseded under constitutional provision. Concomitantly, Rule 804(B)(5) provides that the statements formerly excluded by the dead man's statute are exceptions to the hearsay rule. * * *"

[10] This rule states:

"(B) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

"* * *

"(5) Statement by a deceased, deaf-mute, or incompetent person. The statement was made by a decedent, or a deaf-mute who is now unable to testify, or a mentally incompetent person, where (a) the estate or personal representative of the decedent's estate, or the guardian or trustee of the deaf-mute or incompetent person is a party, and (b) the statement was made before the death or the development of the deaf-mute condition or the incompetency, and (c) the statement is offered to rebut testimony by an adverse party on a matter which was within the knowledge of the decedent, deaf-mute, or incompetent person."

son's Ohio Evidence, Civil & Criminal (1982 Ed.), Section 601.2; Giannelli, Ohio Evidence Manual (1982 Ed.), Section 601.10a.

As previously stated, there are additional safeguards available to the practicing attorney who represents a decedent's estate against fraudulent claims. The most effective, of course, is that of appropriate cross-examination. This was ably pointed out by Justice Corliss of the North Dakota Supreme Court in the case of *St. John* v. *Lofland* (1895), 5 N.D. 140, 143, 64 N.W. 930:

"* * * [T]hose against whom a dishonest demand is made are not left utterly unprotected because death has sealed the lips of the only person who can contradict the survivor, who supports his claim with his oath. In the legal armory, there is a weapon whose repeated thrusts he will find it difficult, and in many cases impossible, to parry if his testimony is a tissue of falsehoods, — the sword of cross examination."

It is our opinion that allowing the introduction of what would otherwise be considered hearsay evidence, pursuant to Evid. R. 804(B)(5), and the full opportunity afforded to the representative of an estate to cross-examine all witnesses, pointedly counter the argument that to render competent the testimony of such witnesses opens the courthouse door to those who would perjure themselves and perpetrate a fraud upon the court. We believe it is much more reasonable to unseal the lips of those persons who would present a claim, as well as the lips of the deceased against whom such claim is brought.

Furthermore, the statute which closed the mouths of honest and dishonest claimants alike results in more harm than good by effectively denying a "day in court" to those who would present honest claims. The statute also provides the unjust result of denying the presentation of valid claims by a representative of the decedent's estate. These "dead man's" statutes impede the court's search for the truth. It is entirely unreasonable that juries should be confused by being deprived of a substantial portion of the pertinent evidence bearing upon the issues in dispute. Based on the foregoing, we hold that with the adoption of Evid. R. 601 and the procedural safeguards within Evid. R. 804(B)(5), R.C. 2317.03 is no longer viable in Ohio.

The judgment of the court of appeals is hereby affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, C. BROWN, and J. P. CELEBREZZE, JJ., concur.