FIRST NATIONAL BANK OF OHIO, Appellant,

v.

ROBB, Appellee.

[Cite as *First Natl. Bank of Ohio v. Robb* (1992), 85 Ohio App.3d 277.]

Court of Appeals of Ohio,
Summit County.

No. 15624.

Decided Dec. 2, 1992.

*Robert E. Kerper* and *Alan Rothenbuecher,* for appellant.

*Salvatore P. Puglisi,* for appellee.

CACIOPPO, Judge.

On August 1, 1990, plaintiff-appellant, First National Bank of Ohio ("FNB"), executor of the estate of Walter Born, filed suit against defendant-appellee, William T. Robb, for money due on a promissory note. The matter was tried before a referee, who recommended that appellant's claim should be dismissed. On February 12, 1992, the trial court adopted the report and recommendation of the referee and granted judgment in favor of Robb.

The facts adduced at the hearing before the referee established a long course of conduct and business dealing between Robb and Born. The transaction upon which appellant's action is based occurred on May 3, 1985. On that date, Born loaned Robb $50,000. This transaction was evidenced by a promissory note. The note reflected interest payable at twelve percent per year and that it was secured by a mortgage. The mortgage was on nine lots in Summit County. The note was recorded on May 13, 1985. On November 26, 1985, Born's bookkeeper notified Robb in writing that the interest on the note was reduced from twelve percent to ten percent.

On April 20, 1986, Robb executed another mortgage deed in favor of Born covering the same nine lots. The second mortgage was recorded on May 30, 1986. The face of the mortgage indicated that Born was due $50,000 at ten percent interest from a mortgage dated April 20, 1986.

As of the date this second mortgage was filed, May 30, 1986, two mortgages were recorded and executed by Robb for $50,000 covering the same property. In addition, there was one void note because on May 23, 1986, Born had written "paid in full" across the front of the April 20, 1986 note. Finally, on May 30, 1986, Robb acknowledged receipt of a letter from Born dated May 3, 1986. This letter indicated that Born extended the time for payment of the May 3, 1985 note.

Over the next year, Born's bookkeeper periodically notified Robb about the interest payments due on the loan. On September 25, 1987, Born executed a

satisfaction of the second mortgage. Over the following year, Born's bookkeeper again notified Robb about interest payments which were due.

On January 11, 1989, Robb and his wife executed a mortgage deed in favor of Born for $85,666. This mortgage was based upon a note for $85,666 at eight percent interest payable at $800 per month. This mortgage covered six of the nine lots covered by the previous mortgages. On January 17, 1989, Born signed the portion of the 1985 mortgage which indicated that the conditions of the mortgage had been complied with and were satisfied and discharged. This satisfaction and discharge was recorded on February 27, 1989.

On June 15, 1989, Born prepared a written document called "Agreement for Forbearance." The document was executed by Born, Robb, and Robb's wife, witnessed by two people, and notarized. The document states that any monies owed Born under the $85,666 note and mortgage were to be cancelled and that the note in support of the mortgage should be marked paid in full.

## Assignments of Error I, II and III

"I. The trial court erred in holding that the May 3, 1985 promissory note for $50,000 was cancelled by the November 11, 1988 promissory note for $85,666.

"II. The trial court erred in holding that the May 3, 1985 promissory note for $50,000 was merged into the November 11, 1988 promissory note for $85,666.

"III. The trial court erred in holding that the cancellation of a 1985 mortgage, the cancellation of a 1986 mortgage, and the cancellation of an April 20, 1986 cognovit note established that Walter Born intended to merge and cancel the May 3, 1985 promissory note for $50,000 by executing and subsequently cancelling the November 11, 1988 promissory note for $85,666."

The first three assignments of error assert that the court erred by finding that the 1985 note was cancelled by Born and therefore will be addressed together. A trial court's adoption of a referee's report and recommendation will be reversed only for an abuse of discretion. *Proctor v. Proctor* (1988), 48 Ohio App.3d 55, 60, 548 N.E.2d 287, 292, citing *Purpura v. Purpura* (1986), 33 Ohio App.3d 237, 239–240, 515 N.E.2d 27, 29–30. "Abuse of discretion" connotes more than an error of law or judgment. The term implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

In the case at bar, the court did not abuse its discretion in adopting the referee's report and recommendation. There was evidence presented in the hearing before the referee, as outlined above, that could indicate Born's desire to

cancel the 1985 note. The trial court, after reviewing the record, did not err in so finding.

The first, second, and third assignments of error are overruled.

### Assignment of Error IV

"The trial court erred in admitting over the timely objections of plaintiff-appellant the testimony of defendant's witness, Bernice [*sic*] McStay, regarding the alleged hearsay statements of plaintiff-appellant's decedent, Walter Born, concerning his intent to merge and cancel the May 3, 1985 promissory note for $50,000."

▪ Appellant asserts in its final assignment of error that the trial court erred by allowing hearsay testimony by Born's bookkeeper, Berniece McStay. We do not agree.

During the course of the hearing, FNB called as a witness an employee who worked on Born's estate. She testified that there was no indication that the 1985 note was paid in full or cancelled. McStay was called by Robb later in the proceedings. The testimony in question was as follows:

"Q. Did he ever tell you to cancel any account that he didn't intend to cancel?

"[Objection].

" * * * *

"THE COURT: * * *. Overruled. Go ahead.

"A. Repeat the question.

"Q. The question is, did Walter [Born] ever direct you to mark cancelled on any accounts which he did not intend to be cancelled?

"A. No, sir."

This testimony was properly admitted, pursuant to Evid.R. 804(B)(5), which states:

"(5) Statement by a Deceased, Deaf–Mute, or Incompetent Person. The statement was made by a decedent, or a deaf-mute who is now unable to testify, or a mentally incompetent person, where (a) the estate or personal representative of the decedent's estate, or the guardian or trustee of the deaf-mute or incompetent person is a party, and (b) the statement was made before the death or the development of the deaf-mute condition or the incompetency, and (c) the statement is offered to rebut testimony by an adverse party on a matter which was within the knowledge of the decedent, deaf-mute, or incompetent person."

Evid.R. 804(B)(5) "permits the introduction of hearsay statements made by a deceased person to third persons which tend to rebut the testimony of an adverse

party that is admissible under Evid.R. 601." *Johnson v. Porter* (1984), 14 Ohio St.3d 58, 62, 14 OBR 451, 455, 471 N.E.2d 484, 487.

In the case at bar, the testimony satisfied the three part test of Evid.R. 804(B)(5). First, the decedent's estate was a party. Evid.R. 804(B)(5)(a). Second, the statement was made before decedent's death. Evid.R. 804(B)(5)(b). Third, the statement was offered to rebut the testimony of FNB's witness on a matter within the decedent's knowledge. Evid.R. 804(B)(5)(c). Because this three-prong test was satisfied, the trial court did not err by admitting the testimony in question.

The fourth assignment of error is not well taken.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

REECE, J., concurs.

BAIRD,, P.J., concurs in judgment only.