OPINION
Defendants/third-party plaintiffs-appellants, Immobilaire IV, Ltd. ("Immobilaire IV"), David Davis, and Michael Davis, appeal from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motion of third-party defendants-appellees, Christy Jerles, and the estate of Robert Jerles.
The facts giving rise to this appeal are somewhat lengthy. In 1996, Christy Jerles and her husband, Robert Jerles, now deceased (hereinafter, collectively the "Jerles"), owned a parcel of improved real estate located at 6150 Sunbury Road in Westerville, Ohio. The improvements on the Sunbury Road property consisted of a building, which was subdivided into two separate businesses. The larger portion of the building had for several years been operated as a restaurant and sports bar, which included a second floor tavern and an outdoor patio. The smaller portion of the building was leased to Westerville Beverage, Inc, wherein Westerville Beverage, and subsequently Westerville Beverage's assignee, Alan Tinnes, operated a deli/carryout known as the Wine 
Cheese Emporium, Ltd.
In May 1996, Immobilaire III, Inc. ("Immobilaire III"), a corporation organized and controlled by brothers David Davis and Michael Davis (hereinafter, collectively the "Davis brothers"), entered into a lease with the Jerles for the restaurant and sports bar portion of the Sunbury Road property. In November 1996, following an extensive remodeling project, the restaurant and bar reopened and began operating as Rush Creek Sports Bar Grill II.
Thereafter, the Davis brothers decided to exercise an option in their lease, which gave them or a corporation controlled by them, the right to purchase the Sunbury Road property for $2,095,000. On May 22, 1997, a closing was held, whereby Immobilaire IV, a holding company created and controlled by the Davis brothers, purchased the Sunbury Road property. Financing for Immobilaire IV's purchase consisted of a $1,050,000 loan from National City Bank, and a $1,045,000 promissory note payable to the Jerles (hereinafter "note 1"). In addition to note 1, the Davis brothers also executed two additional promissory notes payable to the Jerles: a $50,000 promissory note ("note 2") to cover some incidental costs connected with the Davis brothers' remodeling of the bar and restaurant which the Jerles had paid, and a $23,000 promissory note ("note 3") to cover back rent owed by Immobilaire III under its lease of the bar and restaurant space. The brothers also executed a separate "Guaranty Agreement," by which they and Immobilaire III guaranteed the payment of notes 1 and 2.
On July 22, 1997, Immobilaire IV served Tinnes with notice to vacate the deli/carryout premises based on Westerville Beverage's breaches of its lease; the lease having been assigned to Immobilaire IV as part of its purchase of the subject property. Tinnes responded to the notice to vacate by filing a quiet title action on August 20, 1997. On February 28, 1998, Robert Jerles died. On March 31, 1998, the trial court issued a decision granting summary judgment for Tinnes on the grounds that the Jerles had waived or consented to all of Westerville Beverage's breaches of its lease.
On May 22, 1998, the Davis brothers and Immobilaire IV (hereinafter collectively "appellants"), with leave of court, filed a third-party complaint against Christy Jerles and the estate of Robert Jerles (hereinafter, collectively "appellees"), alleging appellees had fraudulently induced appellants into purchasing the Sunbury Road property. The crux of appellants' fraud allegations is that first during the negotiations, which proceeded Immobilaire III's lease of the restaurant and bar premises, then during the negotiations which proceeded appellants' purchase of the Sunbury Road property, appellees misrepresented that Westerville Beverage was in default on its lease for the deli/carryout space, and that if appellants purchased the subject property, they would be able to evict Westerville Beverage and its assignee, Tinnes, and operate the deli/carryout themselves at a considerable profit. Specifically, appellants allege that appellees, on several occasions prior to their purchase of the property orally misrepresented that Westerville Beverage and then Tinnes were subject to eviction from the Sunbury Road property due to Westerville Beverage having failed to timely pay its pro rata share of utilities and real estate taxes as required by its lease, and having assigned its lease to Tinnes without appellees approval, in violation of the lease. Appellants also point to an estoppel certificate executed by Christy Jerles on May 20, 1997, in connection with appellants' purchase of the Sunbury Road property, which provides that: "*** [Westerville Beverage] is currently past due with respect to payment of its agreed upon share of utilities and real estates [sic] taxes. In addition, the tenant has violated certain covenants in the Lease Agreement relating to assignment of the Lease."
According to appellants, their plan for repaying the debt incurred in purchasing the Sunbury Road property was dependent upon the profits from the operation of the deli/carryout, and that but for appellees' misrepresentations regarding appellants' ability to evict Westerville Beverage and Tinnes, they would not have agreed to purchase the property for $2,095,000.
By September 1, 1998, appellants were in default on the three promissory notes. Therefore, on November 16, 1998, appellees filed a counterclaim against appellants seeking judgments on the three promissory notes. On December 18, 1998, appellants filed a motion to dismiss appellees' counterclaim in which they raised their allegations of fraud as a defense to enforcement of the promissory notes. On January 29, 1999, the trial court issued a decision converting appellants' motion to dismiss into a motion for summary judgment.
On March 16, 1999, the trial court issued an entry which set April 16, 1999, as the final day for filing all motions for summary judgment and evidence in support thereof, and May 7, 1999, as the final day for submitting memorandum and evidence in opposition to all motions for summary judgment.
On April 16, 1999, appellees filed two motions for summary judgment: one seeking a judgment on their own counterclaims for judgment on the three promissory notes, and one seeking judgment on appellants' fraud claims.
On November 19, 1999, the trial court issued a decision denying appellants' motion for summary judgment and granting both of appellees' motions for summary judgment. The trial court filed an entry journalizing this decision on December 22, 1999.
On January 18, 2000, appellants filed a motion in the trial court pursuant to Civ.R. 60(B)(2) and (3) seeking relief from the judgment denying their motion for summary judgment and granting appellees' motions for summary judgment.
On January 19, 2000, appellants filed a notice of appeal from the trial court's judgment. In their appeal, appellants have assigned the following errors:
 I. WHETHER THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT THE APPELLANTS/THIRD-PARTY PLAINTIFFS RELIEF FROM JUDGMENT PURSUANT TO RULES 60(B)(2) AND 60(B)(3) OF THE OHIO RULES OF CIVIL PROCEDURE UPON DISCOVERY THAT THE THIRD-PARTY DEFENDANTS MISLEAD THE COURT THROUGH THE USE OF NON-EXISTENT "EVIDENCE."
 II. WHETHER THE TRIAL COURT ERRED WHEN IT FAILED TO CONSTRUE CONTROVERTED FACTS IN FAVOR OF THE NON-MOVANT IN RULING ON THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.
 III. WHETHER THE TRIAL COURT ERRED WHEN IT RULED THAT A FRAUDULENTLY INDUCED CONTRACT WAS A VALID AND ENFOREABLE OBLIGATION.
 IV. WHETHER THE TRIAL COURT ERRED WHEN IT RULED THAT A FRAUDULENTLY INDUCED COGNOVIT PROMISSORY NOTE IS ENFORCEABLE.
 V. WHETHER THE TRIAL COURT ERRED WHEN IT RULED THAT THE DEADMAN'S STATUTE RENDERED INADMISSIBLE STATEMENTS MADE BY A PARTY WHO DECEASED DURING THE PENDENCY OF THE INSTANT LITIGATION.
 VI. WHETHER THE TRIAL COURT ERRED WHEN IT RULED THAT THE THIRD-PARTY PLAINTIFFS LACKED THE NECESSARY PRIVITY TO ARGUE THAT THEY DETRIMENTALLY RELIED ON THE ESTOPPEL CERTIFICATE AND THEREFORE COULD NOT RELY ON IT AS A WRITTEN DECEIT TO INDUCE THEM TO ENTER INTO THE TRANSACTION.
 VII. WHETHER THE TRIAL COURT ERRED WHEN IT RULED INADMISSIBLE PAROL EVIDENCE OF PRIOR ORAL REPRESENTATIONS OF THE THIRD-PARTY DEFENDANTS WHICH INDUCED THE THIRD-PARTY PLAINTIFFS TO ENTER INTO A SERIES OF WRITTEN CONTRACTS.
 VIII. WHETHER THE TRIAL COURT ERRED IN BARRING CONSIDERATION OF PAROL EVIDENCE THROUGH THE ENFORCEMENT OF AN INTEGRATION PROVISION IN A FRAUDULENTLY INDUCED CONTRACT.
 IX. WHETHER THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT THIRD-PARTY PLAINTIFFS' CIV. R. 60(B)(5) RELIEF FROM JUDGMENT ON THE GROUND THAT SUMMARY JUDGMENT IN FAVOR OF THE THIRD-PARTY DEFENDANTS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Appellants' first and ninth assignments of error both challenge the trial court's failure to grant appellants' Civ.R. 60(B) motion for relief from judgment and will therefore be addressed together.
The record reveals that the trial court has never ruled on appellants' Civ.R. 60(B) motion. Accordingly, there is no final appealable order pertaining to appellants' Civ.R. 60(B) motion for this court to review.
 Appellants' first and ninth assignments of error are overruled.
We now turn to appellants' remaining assignments of error which challenge the trial court's grants of summary judgment for appellees on appellees' own claims for judgment on the three promissory notes and on appellants' fraud claims.
Preliminarily, because appellants' remaining assignments of error arise out of grants of summary judgment made pursuant to Civ.R. 56, we review the trial court's determination independently, and without deference.Brown v. Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. In conducting our review, we apply the same standard as the trial court.Maust v. Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107. Summary judgment may only be granted if, viewing the evidence most strongly in favor of the non-moving party, no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can only come to a conclusion which is adverse to the non-moving party. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64. A motion for summary judgment first forces the moving party to inform the court of the basis of the motion and to identify portions in the record which demonstrate the absence of a genuine issue of material fact.Dresher v. Burt (1996), 75 Ohio St.3d 280, 296. If the moving party makes that showing, the non-moving party then must produce evidence on any issue for which the party bears the burden of production at trial. Wingv. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, paragraph three of the syllabus (Celotex v. Catrett [1986], 477 U.S. 317,106 S.Ct. 2548, approved and followed).
Appellants' third, fourth, seventh, and eighth assignments of error all challenge the trial court's ruling that the parol evidence rule barred appellants from raising their allegations of fraud as a defense to enforcement of the three promissory notes, and will be addressed together.
The parol evidence rule, which is actually not a rule of evidence, but of substantive law, provides that absent fraud, mistake, or other invalidating cause, a final, integrated, written agreement may not be varied, contradicted, or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements. Galmish v.Cicchini (2000), 90 Ohio St.3d 22, 27. The purpose of the rule is to protect the integrity of written contracts. Id. "By prohibiting evidence of parol agreements, the rule seeks to ensure the stability, predictability, and enforceability of finalized written instruments." Id.
However, the parol evidence rule will not prevent the introduction of parol evidence for the purpose of establishing that one was fraudulently induced to enter into the final written agreement. Id. at 28. "But, a fraudulent inducement case is not made out simply by alleging that a statement or agreement made prior to the contract is different from that which now appears in the written contract. Quite to the contrary, attempts to prove such contradictory assertions is exactly what the Parol Evidence Rule was designed to prohibit." Id. at 29 (quoting Shanker, Judicial Misuse of the Word Fraud to Defeat the Parol Evidence Rule and the Statute of Frauds [With Some Cheers and Jeers for the Ohio Supreme Court] [1989], 23 Akron L.Rev. 1, 7).
In reliance upon the integration clause which appears in each of the three promissory notes,[1] the trial court found that notes constituted final, written integrations. The court then concluded that appellants' fraud allegations, that appellees induced them to execute the notes by misrepresenting that the deli/carryout tenant was subject to eviction, contradicted the terms of the notes and were therefore inadmissible under the parol evidence rule.
However, appellants' allegations of fraud do not vary or contradict the terms of the promissory notes. The terms of the notes are limited to the method of repayment of their respective debts, and the consequences of default thereon. Thus, appellants' allegations that they were induced to sign the notes because of appellees' misrepresentations (they would be able to evict the tenant of the deli/carryout), serve to supplement rather than contradict the terms of the notes. Parol evidence is admissible for the purpose of supplementing an integrated contract where, as here, fraud in the inducement is alleged. Niehaus v. Haven ParkWest, Inc. (1981), 2 Ohio App.3d 24, 25; Dobson v. National LighterCorp. (June 30, 1993), Trumbull App. No. 92-T-4704, unreported. Therefore, the trial court was mistaken in concluding that the parol evidence rule prohibited appellants from raising their fraud allegation in defense of appellees' claims to enforce the three promissory notes.
However, our determination that the parol evidence rule does not prohibit appellants from raising their fraud allegations as defenses to enforcement of the three promissory notes does not end our inquiry into whether the trial court properly granted summary judgment for appellees on their claims to enforce the promissory notes.
In addition to the integration clauses discussed by the trial court, each of the three promissory notes contains the following cognovit provisions:
 Debtor authorizes any attorney-at-law to appear in any state or federal court of record in the United States after this note matures (whether by lapse of time, acceleration of maturity or otherwise); to waive the issuance and service of process; to confess judgment against Debtor and/or any undersigned guarantor on favor of the holder of this note for the amount then appearing due, together with interest and costs of suit; and to release all errors and waive all rights of appeal and stay of execution. If any judgment against Debtor and/or any undersigned guarantor is vacated for any reason, this warrant of attorney may be used to obtain additional judgments.
 WARNING: BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT PRIOR KNOWLEDGE AND THE POWERS OF A COURT CAN [B]E USED TO COLLECT FROM YOU REGARDLESS OF ANY CLAIMS YOU MAY HAVE AGAINST THE CREDITOR WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CAUSE.
By definition, a cognovit provision in a promissory note cuts off every defense, except payment, which the maker of the note may have against enforcement of the note. Black's Law Dictionary (6 Ed. 1990), 260; SeeShore West Construction Co. v. Sroka (Dec. 21, 1989), Cuyahoga App. No. 57841, unreported, reversed on other grounds (1991), 61 Ohio St.3d 45
(indicating that because the purchasers of a newly constructed residence had executed a cognovit note, the purchasers' defenses attacking the underlying contract with the builder-creditor were irrelevant to their liability on the note).
Further, the "Guaranty Agreement" by which the Davis brothers and Immobilaire III guaranteed the payment of notes 1 and 2, contains the following provision:
 This is an absolute, unconditional, irrevocable and continuing guaranty and will remain in full force and effect until all of the Obligations have been indefeasibly paid in full. This Guaranty will extend to and cover any and all amendments, extensions, supplements, substitutions and renewals of the Obligations and any number of extensions of time for payment thereof and will not be affected by any surrender, exchange, acceptance, compromise or release by the Jerles of any other party, or any other guaranty or any security held by it for any of the Obligations, by any delay or omission of the Jerles in exercising any right or power with respect to any of the Obligations or any guaranty or collateral held by Jerles for any of the Obligations or this Guaranty, or by any irregularity, unenforceability or invalidity of any of the Obligations or any part thereof or any security or other guaranty thereof. The obligations of the Guarantors hereunder shall not be affected, modified or impaired by any counterclaim, set-off, deduction or defense based upon any claim the Guarantors may have against the Jerles or the Borrower, except payment or performance of the Obligations. (Emphasis added.)
Given the cognovit nature of the three promissory notes and the above language in the "Guaranty Agreement," appellants are foreclosed from raising their fraud allegations as defenses to enforcement of the notes.
Based on the foregoing discussion, the trial court correctly granted summary judgment for appellees on their claims to enforce the three promissory notes, albeit for the wrong reason. In reaching this conclusion, it is important to recognize that the real estate transaction underlying the three promissory notes was a complex business transaction between similarly situated and experienced business people, all of whom could be expected to have read and understood the documents that they were signing.
Appellants' third, fourth, seventh, and eighth assignments of error are overruled.
Before turning to appellants' remaining assignments of error, it bears emphasizing that appellants' assertion of their fraud allegations as defenses to appellees' claims for judgment on the three promissory notes, and appellants' assertion of those same fraud allegations as affirmative claims are distinct and independent matters. Kirshtein v.Balio (N.Y.App. 1993), 605 N.Y.S.2d 165, 166; Parry v. Goodson (N.Y.App. 1982), 452 N.Y.S.2d 635, 636. Accordingly, our conclusion that the cognovit provisions in the promissory notes prevent appellants from raising their fraud allegations as a defense to appellees' claims for judgment on the notes, does not impair appellants' assertion of their fraud allegations as affirmative claims.
Appellants' second, fifth, and sixth assignments of error assert that the trial court erroneously failed to consider certain evidence put forward by appellants in support of their fraud allegations. While this evidence impacted appellants' ability to prove its fraud allegations as either defenses or affirmative claims, given our conclusion that appellants may not assert their fraud allegations as defenses to enforcement of the promissory notes, our discussion of appellants' second, fifth, and sixth assignments of error will be limited to appellants' proof of their fraud allegations as affirmative claims.
As previously noted, appellants' fraud allegations rest largely on a series of alleged oral misrepresentations by Robert Jerles, and upon an estoppel certificate executed by Christy Jerles, two days before appellants' purchase of the property. The trial court refused to consider either of these matters in support of appellants' fraud allegations, concluding that Robert Jerles' alleged oral misrepresentations were inadmissible hearsay, and that appellants were not entitled to rely upon the estoppel certificate, as appellants lacked privity.
Appellants' fifth assignment of error asserts that the trial court erred in determining that Robert Jerles' alleged oral misrepresentations were hearsay and therefore inadmissible.
In discussing the admissibility of Robert Jerles' alleged oral misrepresentations, both the trial court and the parties seem to have assumed that the statements at issue constitute hearsay. Consequently, the parties' briefs focus on whether the abrogation of the "dead man" statute, R.C. 2317.03, and the resulting interplay between Evid.R. 601 and 804(B)(5) created a hearsay exception which makes Robert Jerles' statements admissible. While understandably, since the trial court used hearsay as its basis, much of the argument is unnecessary, as Robert Jerles' alleged misrepresentations do not constitute hearsay.
Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Here, appellants did not offer Robert Jerles' alleged misrepresentations, that if appellants purchased the property they would be able to evict the deli/carryout tenant and operate the business themselves at a considerable profit, for the proof of the matter asserted. In fact, appellants' fraud claims allege that these statements were false. Instead, appellants offered the alleged oral misrepresentations to show that the statements were made in order to establish the misrepresentation element of their fraud claims. Appellants could be fully cross-examined about what they heard. The declarant's testimony of Robert Jerles' alleged misrepresentations do not constitute hearsay; additionally, they should have been admitted by the trial court as "verbal acts." State v. Williams (1988), 38 Ohio St.3d 346,348; Savage v. Residenz Realty (Oct. 10, 1997), Greene App. No. 96-CA-150, unreported, fn. 2 (holding that decedent's alleged oral misrepresentation made in connection with the sale of a parcel of real estate was not hearsay when offered to prove fraud); Towne v. Dinius
(N.D. 1997), 565 N.W.2d 762, 765-766; Banks v. Martin (OR.App. 1986),717 P.2d 1192, 1195, fn. 6; Instant Services, Inc. v. Brock (TX.App. 1974), 510 S.W.2d 622.
Any significance of the statements having been made by a person who is now deceased has been eliminated by abrogation of the "dead man" statute. See Evid.R. 601; Johnson v. Porter (1984), 14 Ohio St.3d 58,62.
Appellants' fifth assignment of error is sustained.
Appellants' sixth assignment of error asserts that the trial court erred in determining that appellants could not rely on the estoppel certificate in support of their fraud claims.
The trial court concluded that appellants were not entitled to rely on the estoppel certificate signed by Christy Jerles to support their fraud claims, as they were not in privity with the parties to the document. In reaching this conclusion, the trial court apparently relied upon the fact that the terms of the estoppel certificate indicate that it was executed by appellees for the benefit of National City Bank.
Appellants challenge the trial court's finding that they lacked privity with the deposition testimony of Frank Agin, the attorney who represented them in the purchase of the subject property. According to appellants, Agin testified that he drafted the estoppel certificate. Unfortunately, the record reveals that Agin's deposition was not filed with the trial court until August 9, 1999, more than two months after the May 7, 1999 deadline established by the trial court for the submission of all summary judgment evidence. Further, there is nothing in the record that suggests the trial court considered Agin's deposition despite its untimeliness. Consequently, we decline to consider Agin's deposition.
Nonetheless, the trial court's refusal to permit appellants to rely on the estoppel certificate on the grounds that they lacked privity was erroneous. The elements of a fraud claim are as follows:
 (a) a representation or, where there is a duty to disclose, concealment of a fact,
(b) which is material to the transaction at hand,
 (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
 (d) with the intent of misleading another into relying upon it,
 (e) justifiable reliance upon the representation or concealment, and
 (f) a resulting injury proximately caused by the reliance.
Burr v. Stark Cty. Bd. Of Commrs. (1986), 23 Ohio St.3d 69. Privity is not an element of fraud, and it is well-established that privity need not be established to prevail on a fraud claim. Haddon View Investment Co.v. Coopers Lybrand (1982), 70 Ohio St.2d 154, 158.
Although appellants need not establish privity to present the estoppel certificate as evidence of fraud, they must establish that they justifiably relied on the document. David Davis, in his deposition, testified that he did not learn of the existence of the estoppel certificate until sometime after Immobilaire IV had closed on its purchase of the Sunbury Road property. Michael Davis' deposition testimony indicates that David Davis handled the purchase of the subject property and that Michael Davis had no knowledge of any documents associated with the transaction. Given the Davis brothers' deposition testimony that they did not learn of the existence of the estoppel certificate until after they had closed on the subject property, appellants cannot show that they relied upon the document in making their decision to purchase the property. Accordingly, the estoppel certificate is not relevant to appellants' fraud claims, and is inadmissible under Evid.R. 402. Therefore, the trial court properly excluded the estoppel certificate, albeit for the wrong reason.
Appellants' sixth assignment of error is overruled.
Appellants' second assignment of error asserts that had the trial court construed the affidavit of David Davis filed on February 18, 1999, in appellants favor, as it was required to do under Civ.R. 56, it would have denied both of appellees' motions for summary judgment. Essentially, appellants assert that the affidavit of David Davis is sufficient to raise genuine issues of material fact regarding appellants' allegations of fraud, thereby making summary judgment for appellees on their claims for judgment on the promissory notes, and on appellants' fraud claims inappropriate.
Given our prior conclusion, under appellants' third, fourth, seventh, and eighth assignments of error, that appellants are foreclosed from raising their fraud allegations as defenses to enforcement of the three promissory notes, our discussion of appellants' second assignment of error will be limited to the argument that David Davis' affidavit is sufficient to raise a genuine issue of material fact regarding appellants' fraud claims. In relevant part, the affidavit of David Davis asserts the following: (1) beginning at a time prior to Immobilaire III's lease of the Sunbury Road property, and continuing through Immobilaire IV's May 22, 1999 closing on the property, Robert Jerles repeatedly represented that Westerville Beverage was in default on its lease for the deli/carryout space in that it had failed to pay its pro rata share of property taxes and utilities as required under its lease; (2) in early January 1997, the Davis brothers learned that Westerville Beverage had assigned its lease for the deli/carryout space to Tinnes; (3) shortly thereafter, Robert Jerles falsely represented to the Davis brothers that Westerville Beverage had not obtained appellees' consent for the assignment of its lease to Tinnes as required by the lease, thereby giving rise to another breach of the lease; (4) Robert Jerles represented to the Davis brothers that the gross annual income from the deli/carryout operation was approximately $1.1 million, resulting in monthly net receipts of between $28,000 and $32,000; (5) Robert Jerles falsely represented to the Davis brothers that after closing on the real estate they would be able to evict Westerville Beverage and Tinnes from the deli/carryout premises due to Westerville Beverage's several breaches of the lease, and operate the business themselves at a net revenue of between $28,000 and $32,000 per month; (6) following the closing on the property, appellants learned that, contrary to the representations made by Robert Jerles, appellees had actually waived Westerville Beverage's failure to pay its pro rata share of property taxes and utilities, and had expressly consented to Westerville Beverage's assignment of its lease to Tinnes, and there was therefore no possibility of evicting Tinnes; and (7) as a result of Robert Jerles' misrepresentations, appellants suffered damages in the form of an increased purchase price for the property and in the form of lost revenues from their inability to operate the deli/carryout themselves.
Appellees argue that the allegations contained in David Davis' affidavit are insufficient to prove fraud for several reasons. Appellees first argue that appellants' fraud claims fail because they rest on Robert Jerles' alleged misrepresentation that appellants would be able to evict the deli/carryout tenant once they purchased the property, and that this misrepresentation constitutes an inactionable expression of legal opinion.
Appellees are correct in asserting that Robert Jerles' alleged misrepresentations that the deli/carryout tenant could be evicted, constitute a legal opinion, and that such a legal opinion will not support an action for fraud. Lynch v. Dial Finance Co. of Ohio No. 1,Inc. (1995), 101 Ohio App.3d 742, 750; Snoderly v. Brown (1949), 56 Ohio Law Abs. 47, 50-51. However, despite appellants' misplaced reliance on a legal conclusion to support their fraud claims, their claims are sufficient to raise a genuine issue of fact about whether there was a fraudulent inducement.
Unlike the fraud claims in Lynch and Snoderly, appellants' fraud claims do not rest solely on an inactionable legal conclusion. Rather, appellants also allege that Robert Jerles misrepresented that the deli/carryout tenant was in breach of its lease in several respects, when he knew that said breaches had been waived or expressly approved. These misrepresentations of fact, even without the related legal conclusion that appellants would be able to evict the deli/carryout tenant, may support a claim for damages. Specifically, accepting for purposes of summary judgment, appellants' allegation that they believed that the returns from their operation of the deli/carryout would significantly exceed the returns from leasing the deli/carryout premises, it is reasonable to infer that appellants placed value on the possibility of being able to evict the deli/carryout tenant, and entered into the purchase agreement or adjusted the price offered accordingly. Moreover, at trial, appellants may be able to produce expert testimony that, if the misrepresented facts were true, they could have evicted Tinnes.
Accordingly, appellants' fraud allegations resting on Robert Jerles' alleged oral misrepresentations regarding the deli/carryout tenant being in breach of its lease will support appellants' claim for damages arising out of their alleged overpayment for the subject property. The extent of damages which may be obtained depends upon the testimony produced at trial. Without expert testimony, which is believed by the jury, damages for lost revenue from being unable to operate the deli/carryout is too speculative to be considered.
Appellees next argue that appellants' fraud allegations based on Robert Jerles' alleged oral misrepresentations fail because there is no evidence that the misrepresentations were material to appellants' purchase of the Sunbury Road property. David Davis' affidavit asserts that appellants paid more for the subject property as a result of Robert Jerles' alleged oral misrepresentations. This statement is sufficient to create an issue of fact regarding materiality. However, appellees argue that David Davis' assertion of materiality must be rejected because if, as appellants assert, the ability to evict the deli/carryout tenant was material to the transaction, appellants would have memorialized that fact in some document pertaining to the land purchase.
Appellees' assertion that Robert Jerles' alleged misrepresentations were not material because appellants failed to obtain a writing pertaining to them is argument, not evidence. Certainly, the proof is more persuasive if the representations were in writing, but, as stated before, the oral representations are admissible and present a genuine issue of fact.
Appellees also argue that David Davis' assertion in his affidavit that he relied on Robert Jerles' representations regarding the revenue of the deli/carryout cannot be used to support appellants' fraud claims, as it is contradicted by David Davis' testimony in his deposition, which was filed with the trial court several weeks after his affidavit.
It is true that David Davis testified at his deposition that his beliefs regarding the potential revenue that could be earned from operating the deli/carryout were based in part on his own observations and discussions with the deli/carryout tenant. However, David Davis also testified that his understandings in this regard were based, in part, upon "what Bob would say to me." Thus, David Davis' affidavit and deposition are not inherently contradictory on this point. In fact, both support the proposition that appellants relied, at least in part, upon Robert Jerles' representations about the deli/carryout's earnings.
Based upon the foregoing, David Davis' affidavit and deposition are sufficient to establish genuine issues of material fact regarding: (1) whether Robert Jerles made representations that the deli/carryout tenant had violated its lease in several respects which might permit appellants to evict the tenant and take over the operation of the deli/carryout themselves, (2) that such representations were material to appellants' decision regarding whether to purchase the subject property, (3) that such representations were made falsely and with knowledge of their falsity, (4) that the false representations were made with the intent to mislead appellants into purchasing the subject property, (5) that appellants justifiably relied on the false representations, and (6) that appellants suffered monetary damages as a result of these false representations. Therefore, the trial court erred in granting appellees' motion for summary judgment on appellants' fraud claims.
Appellants' second assignment of error is sustained.
Having sustained appellants' second and fifth assignments of error, but having overruled appellants' first, third, fourth, sixth, seventh, eighth, and ninth assignments of error, the judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded for further proceedings consistent with this opinion.
BOWMAN and TYACK, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] The focus of appellants' Civ.R. 60(B) motion, which we have already held not to be properly before us, is appellants' claim that two of the three promissory notes do not actually contain the integration clause relied upon by the trial court. Appellants apparently base this argument on the fact that the pages containing the integration clause were inadvertently omitted by appellees from two of the three copies of the notes which were attached to appellees' motions for summary judgment. The copies of the three notes attached to appellees' counterclaim, however, are complete and reveal that all three notes contain the integration clause.